POPE ET AL., APPELLANTS, *v.* RESERVE LIFE INS. CO., APPELLEE.

(No. 7245—Decided November 26, 1963.)

*Messrs. Ahern & Butler,* for appellants.
*Messrs. Hamilton & Kramer,* for appellee.

BRYANT, P. J.   On September 11, 1957, Dimitri S. Pope purchased three policies of insurance covering hospital, medical and related expenses for himself and his wife, Rada, plaintiffs-appellants herein, from an agent of Reserve Life Insurance Company, defendant-appellee herein and hereinafter called Reserve.   A separate application was made for each policy.   Each application contained in printed form ten questions relating to the insured.   Pope signed each application form, but otherwise the written answers to the questions were in the handwriting of Reserve's agent, allegedly based upon oral answers by Pope.

On April 20, 1959, the Popes were in an automobile accident and were injured and as a result incurred hospital, medical and other related expenses amounting to $2,105.90 at the time this action was commenced.   Each of the three new policies carries the names of Dimitri S. Pope and Rada Pope, the latter as a dependent member of insured's family and as being covered by the policy.

Demand was made on Reserve to pay the benefits named in the three policies, the premiums on which totaled $67.05 every three months, or $262.20 if paid annually. It is clearly established that Pope paid all premium payments in advance of the time when due. Reserve refused to make any payments under any of the policies for either of the Popes and refused to accept the last premium payment tendered by Pope.

Suit was brought by the Popes in the Columbus Municipal Court against Reserve. The original petition asked for a money judgment in the amount of $2,105.90, whereas the amended petition repeats the claims of the Popes as to the purchase of the insurance, the expenses incurred and the refusal of Reserve to pay, but asks for a declaratory judgment of their rights to receive benefits under the insurance policies.

Reserve filed an answer setting up three defenses but at the time of argument in this court relied upon only the third defense, and only that defense need be considered here. In substance, the third defense alleges that Pope in response to questions Nos. 6 and 9 gave false answers knowingly, etc., and that Reserve relied on them, was materially prejudiced thereby, and but for them would not have issued the policies. The reply on behalf of the Popes specifically denies each affirmative allegation in the third defense of Reserve.

The matter came on for trial before a judge in the court below. On behalf of the Popes, Pope testified, asserting the truth of the answers given and denying that the answers were false. The plaintiffs offered photographic copies of the three insurance policies, plaintiffs' exhibits A, B and C, and plaintiffs' exhibit D is a schedule of hospital, medical and related expenses incurred by the Popes.

On behalf of Reserve, there were offered photographic copies of the three applications signed by Pope, identified as defendant's exhibits 1, 2 and 3, and two depositions. One deposition is that of Reserve's agent, Charles H. Lovett, Jr., and the other deposition is that of Dr. William Bradley of Columbus, Ohio, the personal physician of the Popes.

Upon consideration of the evidence and pleadings, the trial court rendered judgment in favor of Reserve for costs. We have been unable to locate any written opinion of the court below. Apparently, there was no written opinion, and this court

has no knowledge of the reasoning used by the court below in arriving at its judgment.

Counsel for the plaintiffs gave notice of appeal to this court on questions of law. The errors assigned are as follows:

"1. The court erred in rendering a verdict in favor of the defendant-appellee and against the plaintiff-appellants;

"2. The court erred in rendering its verdict in favor of the defendant-appellee contrary to the evidence;

"3. The court erred in that the verdict and judgment is contrary to law;

"4. Other substantial and prejudicial errors manifest in the judgment and from the face of the record."

As we view the entire record before us, the basic issue appears to be whether in the court below Reserve established by requisite evidence the third defense in its answer. As the third defense sets forth in full both the disputed questions and answers and also the claims of Reserve with respect thereto, we quote it in full as follows:

"For its third defense, defendant says that the policies known as 'exhibits A, B and C' were issued upon the basis of a written application which was signed by the plaintiff, Dimitri S. Pope, and which was made a part and is a part of said policies. Said application contains the following question, to-wit:

" '6. Are you and all other members of the family group to be insured now in good health and free from any physical or mental defect? Yes.'

"Said application further contained the following question and answer, to-wit:

" '9. Have you, or any member of the family group to be insured, received medical or surgical advice or treatment within the past 3 years? Yes.'—If answer is Yes, give details below:

"Date: December, 1956.

"Which member? App.

"Nature of illness or accident: hernia operation.

"Doctor: Dr. Bradley.

"Defendant says that said statements were false: that they were known to be false by the said Dimitri S. Pope when made; that they were made with intent to deceive the defendant; that said questions and answers materially affected the acceptance of the risk or hazard assumed by the company; that the defend-

ant company was deceived by said answers and relied upon the truth of said answers in issuing said policy and would not have accepted the risk, and further by reason of said deceit and fraud plaintiff is not entitled to recover in this action.''

Counsel for Reserve have cited the case of *Jenkins* v. *Metropolitan Life Ins. Co.* (1961), 171 Ohio St., 557. The first paragraph of the syllabus of that case reads:

''An insurer may establish an answer to an interrogatory by an applicant for life insurance as a bar to recovery upon a policy by clearly proving that (1) in giving such answer, the applicant willfully gave a false answer (2) such answer was made fraudulently (3) but for such answer the policy would not have been issued and (4) neither the insurer nor its agent had any knowledge of the falsity of such answer. (Section 3911.06, Revised Code, construed and applied.)''

It must be remembered, however, that the *Jenkins case* was a suit to collect under a policy of life insurance, whereas the case now before this court is a suit to collect benefits covering hospital and medical expenses. The Supreme Court, in deciding the *Jenkins case*, construed Section 3911.06, Revised Code, which is applicable in case of a suit on a life insurance policy, where the insurer relies upon allegedly false answers in the application as its defense.

It would appear that in the case now before us we must look elsewhere and in particular to the provisions of Chapter 3923 of the Revised Code which has application to sickness and accident insurance. Section 3923.14, Revised Code, is applicable in cases such as the one now before us where the insurer defends upon the basis of alleged false statements in the application.

It would appear that there is another important distinction between the *Jenkins case* and this case. As we understand the *Jenkins case*, the insured died within two years or less from the time he applied for the life insurance and in his application represented that in the five years prior thereto he had visited one physician on one occasion for a cold, whereas the court found that he had been attended by three physicians during the period and had made a number of visits to each of them.

In the case at bar, the court was informed that the benefits claimed by plaintiffs for hospital and medical services arose

solely as the result of an automobile accident on April 20, 1959, and relate in no way to any pre-existing illness.

In cases in which sickness and accident insurance companies rely upon the defense of alleged false statements in the application, the provisions of Section 3923.14, *supra,* are applicable and read in part as follows:

"The falsity of any statement in the application for any policy of sickness and accident insurance shall not bar the right to recovery thereunder, or be used in evidence at any trial to recover upon such policy, *unless it is clearly proved [1] that such false statement is willfully false, [2] that it was fraudulently made, [3] that it materially affects either the acceptance of the risk or the hazard assumed by the insurer, [4] that it induced the insurer to issue the policy, and [5] that but for such false statement the policy would not have been issued.*" (Emphasis added.)

We have indicated, by inserting numbers 1 through 5, the elements required to be "clearly proved" for an insurer to establish such affirmative defense.

The sole defense here is based upon the alleged false statements in the applications, particularly as they relate to answers to questions Nos. 6 and 9. Ordinarily, a defendant in a civil case is required to establish an affirmative defense by only a preponderance of the evidence. By applying the above statute, it will be seen that the defendant in this case must, as we have shown, offer evidence by which all five elements are "clearly proved" in order to establish the defense of falsity in the applications.

As already indicated, the three insurance policies list the Popes individually and establish a separate premium for the coverage under each of the policies for each of the plaintiffs. In this connection, we shall first give attention to the answers as to Mrs. Pope. The agent of Reserve in his deposition testified that Mrs. Pope was present when he called, and that he asked Mrs. Pope each of the ten questions contained in the application forms. This was disputed by Pope. We have no way of knowing which one is right, but it would appear that the agent wrote down only one set of answers, and, he having omitted to write down any other alleged answers, Reserve can not now rely on them.

Of greater importance is the failure of Reserve to offer any evidence, pursuant to the pertinent provisions of Section 3923.14, *supra* (as indicated by bracketed Nos. 4 and 5), that the alleged false statements induced Reserve to issue the policies, and, but for them, the policies would not have been issued (so far as alleged false statements of, by or about Mrs. Pope are concerned).

So far as we can learn, the only evidence respecting the fourth and fifth provisions above referred to which appears in the entire record as to either Pope or Mrs. Pope is the stipulation in the bill of exceptions, reading as follows:

"Mr. Hamilton: It is further stipulated and agreed by and between the parties that if the vice president of the defendant in charge of underwriting and specifically the issuing of policies was called as a witness he would testify that *had the defendant known of the previous medical history of the plaintiff, Dimitri S. Pope, that the policies known as plaintiffs' exhibits A, B, and C would not have been issued by the defendant.*

"Mr. Ahern: We would agree that the witness would, if called, so testify." (Emphasis added.)

Thus it appears that, so far as Mrs. Pope is concerned, the record is completely silent, and that there simply is no evidence that statements in the applications, either by or about Mrs. Pope are either true or false, either induced Reserve to issue the policies or without which no policies would have been issued.

It is the contention of the plaintiffs that Pope gave a truthful answer when he stated on September 11, 1957, that he and Mrs. Pope were in good health and free from any physical or mental defects. Reserve apparently relies on a diagnosis in 1952 or 1953 that Pope was suffering from laennec's cirrhosis, that a recurrence and hospitalization took place some years later, and that Mrs. Pope was suffering from a pre-existing hernia.

There is a total lack of evidence that on September 11, 1957, Pope was suffering from laennec's cirrhosis or any other kind of cirrhosis, or that Mrs. Pope had a pre-existing or any other kind of hernia. Reserve called Dr. Bradley, the Pope family physician, and Reserve is bound by his testimony.

Dr. Bradley testified that Pope "made a remarkable recovery."

Dr. Bradley testified further that Mrs. Pope's hernia was surgically repaired by Dr. Robert Zollinger either on July 3, 1953, or in 1954.

The phrase, "good health," is subject to a reasonable interpretation, and good health does not require absolute freedom from all bodily infirmities. In the case of *Hess* v. *Ladies of the Maccabees* (1906), 4 Ohio Law Repr., 30, 31, being a suit on a benefit certificate, there appears the following:

"But by the expression 'good health,' is not meant that she should be entirely and absolutely free from all bodily infirmities or all tendency to disease, but that she was in a reasonably good state of health and free from any disease or illness that tended seriously or materially to weaken or undermine her constitution."

For other definitions of the words, "good health," see 18A Words and Phrases (Perm. Ed.), 136 *et seq.*

Even if we give to the testimony of Dr. Bradley the broad interpretation claimed for it by Reserve, there is still a failure on the part of Reserve to meet the statutory requirements above referred to, and there is the further fact, not in dispute here, that whatever the physical condition of the Popes may have been on and prior to September 11, 1957, it had nothing to do with causing the present claims to arise. The Popes admittedly were hurt in an automobile accident on April 20, 1959, and the only claims being asserted at the present time are those arising out of and caused by such automobile accident.

Reserve's agent had this to say with reference to the appearance of the Popes at the time of his visit:

"Q Did Mr. and Mrs. Pope appear to you to be in good health at the time you took this application? A Yes, they did.

"Q When you asked whether or not they were in good health with reference to question number 6 did they tell you that they both felt that they were in good health? A Yes. They both said they felt that they were in the best of health.

"Q And as far as you know and as far as they knew free of any defects? A. Well, they were energetic enough; I will put it that way.

"Q Were they? A Yes."

Thus it appears that there is an absence of evidence which calls into question the truthfulness of the answer given to question No. 6.

So far as question No. 9 is concerned, dealing with the question itself, we note that this question was answered in the affirmative as to whether the Popes had "received medical or surgical advice or treatment within the past 3 years."

At the outset and at this point, the answer is obviously truthful whether there had been one or more than one physician or surgeon giving advice or treatment. It is also necessary to note that Pope clearly and unequivocally reported his hernia operation in December 1956 under the supervision of Dr. Bradley. That this was investigated by Reserve would seem to be indicated by the "application supplement" attached to exhibit C bearing the following notation: "Mt. Carmel Hospital. Mr. Dimitri Pope had hernia operation Dec 1956 at Mt. Carmel Hospital by Dr. Bradley. No trouble since—non-malignent."

It is obvious, therefore, that Pope reported that he had received medical or surgical care within the three-year period namely, between September 11, 1954, and September 11, 1957, and that Reserve was fully informed with respect thereto.

With the exception of the hernia operation on Pope and the subsequent checkup by Dr. Bradley, very little remains in Dr. Bradley's deposition which disputes the truth of the answer to question No. 9 so far as Pope is concerned. As to the liver condition, it appears that Pope experienced a remarkable recovery with the least medication by Dr. Bradley, more than five years prior to the giving of his deposition. Most of the other conditions he describes existed more than three years prior to September 11, 1957.

The surgery so far as Mrs. Pope is concerned appears to have taken place prior to the beginning of the three-year period, and, although there may have been visits by Dr. Bradley after September 11, 1954, there is no definite statement by Dr. Bradley as to any particular dates. The one hospitalization not disclosed in the application is the final session with cirrhosis, which occurred more than two years prior to the signing of the applications.

In reading the record and testimony in this case, we gain the clear impression that the language barrier played a substantial part in whatever misunderstanding may have entered into the negotiations for these contracts. Pope spent 26 of the

first 30 years of his life in what was then Macedonia under the control of Greece, and, even though he spent the next four decades in this country, it is clear that technical phrases and long words were troublesome to him.

In 1957, Reserve made no effort to contact Dr. Bradley, although its entire case against the Popes is founded on the testimony of Dr. Bradley. Both Lovett and Pope agree that Pope told Lovett to see Dr. Bradley for further information. Just why this was not done is not clear in the record.

The entire case of Reserve against the Popes is founded on the answers to questions Nos. 6 and 9. Whatever may have been the law in Ohio at one time with reference to the defense of falsity in an application, it was materially influenced by the enactment of Section 3923.14, *supra,* establishing five elements to be "clearly proved" before an application can be even "used in evidence," and by Section 3923.141, Revised Code, providing as follows:

"Any person who solicits an application for, or for reinstatement of, a policy of sickness and accident insurance to insure any other person shall be considered the agent of the insurer and not of the insured in any controversy between the insured or his beneficiary and the insurer issuing or reinstating a policy upon such application or accepting or making a renewal of such policy."

There is considerable similarity between the issues in this case and those in the case of *Battle* v. *Reserve Life Ins. Co.* (1959), 83 Ohio Law Abs., 324, in which the first three headnotes are as follows:

"1. In an action on a health and accident policy, which the defendant insurer defends upon the ground of fraudulent misstatement in the application for such insurance, the burden of proof on that issue is on the defendant by virtue of §3923.14 R.C.

"2. In an action on a health and accident policy, which defendant insurer defends upon the ground of fraudulent misstatement in the application for such insurance, defendant insurer is precluded from showing that plaintiff's fraudulent misstatement consisted of answers to questions not contained in the application for insurance by reason of §3923.04 R.C.

"3. It is not sufficient, in an action on a health and accident

policy, which insurer defends on the ground of fraudulent misstatement in the application for insurance, that defendant show a previously existing physical condition in plaintiff insured; it is incumbent on defendant to prove, in addition, that plaintiff made a false statement in his application that such statement was willfully false, that it was fraudulently made, that it materially affected either the acceptance of the risk or the hazard assumed by the insurer, that it induced the insurer to issue the policy, and that but for such false statement the policy would not have been issued. (Sec. 3923.14 R.C.)''

For the reasons above set forth, the first, second and third assignments of errors are well taken and are sustained, the judgment of the court below is reversed, and the cause is remanded to the court below for a new trial.

*Judgment reversed.*

DUFFEY and TROOP, JJ., concur.