BUEMI, APPELLANT, *v.*
MUTUAL OF OMAHA INSURANCE
COMPANY, APPELLEE.

(No. 52026—Decided June 8, 1987.)

*Snyder, Neff & Chamberlin* and *Owen C. Neff,* for appellant.

*Arter & Hadden, Curtiss L. Isler* and *Anthony J. Damelio, Jr.,* for appellee.

KRUPANSKY, J. Plaintiff-appellant, Joseph J. Buemi, appeals from the trial court's grant of defendant-appellee Mutual of Omaha's motion for summary judgment. In his complaint Buemi alleged Mutual of Omaha was required to pay certain medical claims in the amount of $37,754.27 in accordance with its policy of health insurance. Mutual of Omaha answered asserting it had rejected Buemi's claim for benefits and had cancelled the policy. Mutual of Omaha also refunded Buemi his premiums. Mutual of Omaha subsequently filed a motion for summary judgment. The premise of the motion was Buemi falsely represented material facts on the application for the policy and in accordance with R.C. 3923.14 the insurer was entitled to cancellation of the policy. The trial court summarily granted the motion without opinion.

On April 5, 1972, Buemi was admitted to Marymount Hospital for gall bladder surgery. During his hospital stay which was concluded on April 18, 1972, Buemi was also diagnosed and told he had diabetes and had previously suffered a myocardial infarction (heart attack). Buemi was born on November 20, 1924 and was forty-seven years old at the time of surgery.

On May 12, 1974 appellant was again admitted to Marymount Hospital. The hospital records indicate the nature of his complaint was chest pains and shortness of breath. When Buemi's deposition was taken relative to the case *sub judice,* he indicated the purpose of his being admitted to the hospital on May 12, 1974 was a pipe "hit me in the head." The hospital

records are devoid of this complaint. Buemi was released on May 13, 1974 and was forty-nine years old at the time of this incident.

At some point in 1978 Buemi was seen by Dr. Riggs who prescribed Diabinese in the amount of one hundred milligrams per day. Diabinese is an oral medication for diabetes.

On June 12, 1979 Buemi sought the care of Dr. Mersol due to a complaint of post-nasal drainage. Dr. Mersol placed Buemi on an antihistamine and also noted he was a diabetic. Buemi indicated to Dr. Mersol he was still taking Diabinese. Dr. Mersol next saw Buemi on December 11, 1979. Buemi's complaint was a sore throat. On June 16, 1980, Buemi again sought the care of Dr. Mersol due to a constant sore throat. Dr. Mersol admitted Buemi to Marymount Hospital on July 9, 1980. Buemi underwent a throat biopsy operation on July 10, 1980. The operation disclosed chronic laryngitis and a hiatal hernia. Dr. Mersol apprised Buemi of this problem. The hospital records also indicated Buemi had "some emphysema." On July 13, 1980, Buemi was discharged from the hospital; however, he remained under the care of Dr. Mersol and was treated by him on July 22, 1980, August 26, 1980, and December 9, 1980.

On February 14, 1981, Buemi was admitted to Brentwood Hospital. The diagnosis included emphysema and uncontrolled diabetes. At the time of his admission Buemi was still taking Diabinese. Buemi remained in the hospital until his blood sugar was brought under control. During his stay Buemi attended diabetes classes and was taught how to inject himself with insulin for his diabetic problem.

On September 21, 1981 Buemi sought the care of Dr. Hamilton due to a paralysis on the right side of his face and was admitted to Marymount Hospital on the same day. Buemi was diagnosed as having facial palsy, diabetes mellitus and chronic obstructive pulmonary disease ("COPD"). Buemi was discharged on September 26, 1981.

The foregoing doctor and hospital visits revealed the following medical problems which were apparent to Buemi prior to his application for insurance:

1. Diabetes Mellitus Type II
2. Bells Palsy (Facial Palsy)
3. Emphysema
4. Hiatal Hernia
5. Hypertension (high blood pressure)
6. Chronic Obstructive Pulmonary Disease (COPD)
7. Chronic Laryngitis.

On February 8, 1983, Buemi made an application through Mr. Rose, an agent for Mutual of Omaha, for a health insurance policy.

The application contained numerous questions relative to the applicant's medical history due to the fact Mutual of Omaha did not require a medical examination. The application included questions concerning, *inter alia,* the following subject areas:

1. known physical disorders;
2. medical examinations;
3. medical treatment and advice;
4. hospital visits and stays.

Notwithstanding Buemi's long and extensive medical history, hospital visits and doctor visits, the only disclosure indicated on the application revealed he had been operated on for a gall bladder condition in 1972. Buemi signed the application and placed his initials next to the phrase "No Other Medical History." The only medical history revealed in the application clearly indicated the lone gall bladder operation. The application does not reveal the existence of diabetes, hiatal hernia, facial palsy, emphysema, high blood pressure, COPD, or chronic laryngitis. Buemi had been diagnosed

as having all of the above disorders during his various hospital visits, *supra,* prior to February 8, 1983 when he signed the health and accident application with Mutual of Omaha.

Bill Wagner, senior representative of Mutual of Omaha, telephoned Buemi on February 15, 1983 to complete the underwriting report for the application of insurance. In his affidavit attached to appellee's motion for summary judgment Wagner averred he asked Buemi several questions relative to his previous medical history. Specifically, whether Buemi had any prior hospitalizations, operations, whether he was currently on medication and whether he had any current health problems. Wagner further averred Buemi disclosed only the lone gall bladder operation and two minor operations he had had as a child. Buemi made no additional disclosures.

On March 10, 1983 the insurer sent Buemi a "Reverification Letter." The letter contained a copy of the policy and application and directed Buemi to review the application to ensure it was correct and complete. Buemi checked the box next to the statement indicating *he had reviewed the application and it was correct and complete,* signed the letter and sent it back to Mutual of Omaha on March 22, 1983.

Mutual of Omaha cancelled the policy upon learning of Buemi's extensive medical history. Mutual notified Buemi of such action by letter dated October 6, 1983 wherein it cancelled the policy and refunded all premiums paid pursuant to the policy. In said letter attached to appellee's motion for summary judgment, Mutual of Omaha stated it would not have issued the policy had it been aware of Buemi's medical history, *viz.,* specifically, the diabetes and COPD diagnoses.

Lastly, it should be noted Buemi was literate and the record revealed he was the president of a corporation at one point and was self-employed in numerous business ventures at other times in his career.

Appellant's sole assignment of error follows:

"The judgment below is contrary to law."

A court reviewing the grant of summary judgment must follow the standard set forth in Civ. R. 56(C), which specifically provides that before summary judgment may be granted, the movant must satisfy the following criteria:

"(1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party." *Temple* v. *Wean United, Inc.* (1977), 50 Ohio St. 2d 317, 327, 4 O.O. 3d 466, 472, 364 N.E. 2d 267, 274.

It is well-settled law that the party seeking summary judgment bears the burden of showing that no genuine issue of material fact exists for trial. *Harless* v. *Willis Day Warehousing Co.* (1978), 54 Ohio St. 2d 64, 8 O.O. 3d 73, 375 N.E. 2d 46. Where the evidentiary materials filed by the moving party establish the absence of a genuine issue of material fact and that the moving party is entitled to judgment as a matter of law, summary judgment must be granted. *Rodger* v. *McDonald's Restaurants of Ohio, Inc.* (1982), 8 Ohio App. 3d 256, 8 OBR 347, 456 N.E. 2d 1262.

Applying these principles, the issue then becomes whether, from the record before us, the trial court's judgment to grant the summary judgment motion can be sustained in the instant case.

It is essential to a proper understanding of this appeal to define the nature of the relationship that existed between the insured, Buemi, and the insurer, Mutual of Omaha. The case of *Prudential Ins. Co. of America* v. *Carr* (C.P. 1964), 94 Ohio Law Abs. 385, 388, 30 O.O. 2d 373, 374-375, 199 N.E. 2d 412, 414, is instructive on this point and states as follows:

"There is, however, one important distinction to be noticed between the ordinary contract and the insurance policy. The law has recognized that the practicalities of the situation place insured and insurer in a much different position than are most contracting parties. The insurer, at least under a policy such as that here involved where there is no medical examination, must look to the insured for all of the information on which it is to consider the issuance of the policy. Insured, in turn, is entering into a somewhat particularized type of contract and may justifiably expect treatment such as that circumstance dictates. With the utmost correctness the United States Supreme Court has accordingly called attention to the fact that:

" 'Insurance policies are traditionally contracts *uberrimae fidei* and a failure by the insured to disclose conditions affecting the risk, of which he is aware, makes the contract voidable at the insurer's option. (Citing authorities.)' *Stipoich* v. *Metropolitan Life Ins. Co.,* 277 U.S. 311 (1928)."

The relationship which existed between Buemi and Mutual of Omaha when the insurer issued the policy without a medical examination placed total reliance on the information it gathered from the insured. Consequently, the relationship was fiduciary in nature and "require[d] of the parties the utmost good faith in their dealings." *Prudential, supra,* at 388, 30 O.O. 2d at 375, 199 N.E. 2d at 414.

Having defined the nature of the parties' relationship, the balance of the discussion will analyze the propriety of the trial court's grant of summary judgment in favor of the insurer in light of the applicable statutory provision and judicial authority.

R.C. 3923.14 sets forth the criteria an insurer must satisfy in order to cancel a health and accident insurance policy and states in pertinent part as follows:

"The falsity of any statement in the application for any policy of sickness and accident insurance shall not bar the right to recovery thereunder, or be used in evidence at any trial to recover upon such policy, unless it is clearly proved [1] that such false statement is willfully false, [2] that it was fraudently made, [3] that it materially affects either the acceptance of the risk or the hazard assumed by the insurer, [4] that it induced the insurer to issue the policy, and [5] that but for such false statement the policy would not have been issued."

In accordance with R.C. 3923.14, Mutual of Omaha clearly proved all five elements as a matter of law and, therefore, the trial court properly granted summary judgment in its favor.

The case of *Redden* v. *Constitution Life Ins. Co.* (1961), 172 Ohio St. 20, 15 O.O. 2d 53, 173 N.E. 2d 365, is instructive on the requisite showing of what an insurer must demonstrate to satisfy the first two elements of the pentadactyl test set forth in R.C. 3923.14. In this respect the syllabus of *Redden* states as follows:

"Under the terms of a contract for health and accident insurance, a recovery is precluded by false answers knowingly given by the insured to material questions contained in his signed application or where the insured on delivery of the policy discovers that such answers are false

and he then conceals such falsity from the insurer."

In *Prudential* the court interpreted the *Redden* syllabus in the following manner:

"The significance of the syllabus is that it recognizes that, when an applicant makes a knowingly false answer to a question in the application, such answer satisfies the statutory requirement that it be 'willfully false' and 'fraudulently made.' " *Prudential, supra,* at 389, 30 O.O. 2d at 375, 199 N.E. 2d at 415.

In the case *sub judice,* Mutual of Omaha attached to its motion for summary judgment, *inter alia,* the affidavit of the insurance agent, Mr. Rose, who initially met with Buemi to complete the health insurance application. In the affidavit Rose averred he read aloud to Buemi all of the questions contained in such application, including the following questions:

"Have you or any named dependent ever: (a) had, (b) been advised by a physician that you had or, (c) received advice or treatment for: (circle conditions answered 'yes' and give details in 16 below)

"1. *High Blood Pressure;* heart, vein or artery disease; rheumatic fever; *lung* or other respiratory disorder?
"* * *

"Other than above, have you or any named dependent, within the past five years: (If 'yes' give details in 16 below)
"1. Had any mental or physical disorder listed above?
"2. *Had, or been told you had, or received advice or treatment for any symptoms of ill health?*
"3. *Had any physical examinations?*
"4. *Been a patient in a hospital clinic, sanitarium, or other medical facility?*

"5. Had *electrocardiogram, X-ray, or other diagnostic tests,* surgery?
"6. Been advised to have *any diagnostic test, hospitalization,* treatment or surgery which was not completed?" (Emphasis added.)

Rose further averred the following relative to Buemi's application for insurance:

"On February 8, 1983, after having reviewed the application, Mr. Buemi signed the application. He also placed his initials adjacent to the handwritten notation 'no other medical history.'

"No other disclosure of medical history, prior hospital or medical treatment, or medical condition was made to me by Mr. Buemi other than the information appearing on the aforesaid application [*viz.,* the lone gall bladder operation]."

Buemi countered the foregoing averments of Rose with his own affidavit attached to the brief opposing the motion for summary judgment. In said affidavit Buemi averred in pertinent part as follows:

"1) In respect to the application for insurance * * * basically only one medical question was asked [presumably the question relating to the disclosed gall bladder operation] and that was answered truthfully.
"* * *

"3) I specifically deny that Mr. Rose read all of the questions on the application as alleged, or that I orally responded to any, except one. [Again, presumably the gall bladder operation.] Nor did I review the application. No other medical history was asked of me."

In addition to the affidavit by agent Rose, the insurer also attached to its motion for summary judgment the affidavit of its senior representative, Mr. Wagner. Wagner stated in his affidavit that he telephoned Buemi on February 15, 1983 for the purpose

of completing the underwriting report following his February 8, 1983 application for insurance. In this regard Wagner averred in his affidavit as follows:

"I personally spoke with Mr. Buemi over the phone on February 15, 1983. During that phone conversation, I asked Mr. Buemi several questions, including, without limitation, the identity of his family physician, whether he had had prior hospitalizations or operations, whether he was currently on medication, whether he had any current health problems, and when he was last seen by any physician. In response to my question, Mr. Buemi informed me that he had a gall bladder operation in 1970 at Marymount Hospital under the care of Dr. Kubichek of Garfield Heights, Ohio from which he had fully recovered with no further difficulty. He also informed me that he had his tonsils and adenoids removed as a child and that he had no family physician. On February 15, 1983, no other disclosure of medical history, prior medical or hospital treatment, or medical condition was made to me by Mr. Buemi."

Buemi also countered the averments of Wagner with his own affidavit which averred in pertinent part as follows:

"6) In respect to the affidavit of Bill Wagner filed by the Defendant herein, the only question asked me was for confirmation of my gall bladder operation in 1970, and to confirm it. No other questions were asked of me."

If the foregoing affidavits constituted the extent of the evidence between the parties there would have been a genuine issue of material fact incapable of resolution by summary judgment. Specifically, when the foregoing evidence is construed most strongly in favor of the insured, as required by Civ. R. 56, there exists a genuine issue of material fact as to whether the insured falsely answered the questions on the application.

In addition, however, to the foregoing affidavits of the agents, there exist additional evidentiary materials attached to the motion for summary judgment which, when construed in the insured's favor, reasonable minds can reach only one conclusion, *viz.*, the insured knowingly made false answers to the questions in the application. Civ. R. 56; *Prudential, supra.* Specifically, the record reveals Mutual of Omaha sent Buemi a "Reverification Letter" on March 10, 1983. The letter stated, *inter alia,* as follows:

"Your policy has been issued relying upon the information contained in your application. A photocopy is already attached to and made a part of your policy. It is very important to you * * * and to us * * * that your application contained complete and accurate information. Your eligibility for benefits and the amount of benefits may well depend on it.

"Enclosed is an additional photocopy of your application and we ask that you review it carefully. If it is incomplete or inaccurate in any respect, please provide us with full additional information in the space provided below."

The reverification letter then requested Buemi to "complete and sign the appropriate spaces provided below * * *." In this regard the reverification letter contained the following two statements of which the insured was requested to check the "box" next to the appropriate statement:

"In response to your above request, I have checked the appropriate box:

"(  )  The application for my policy is correct and complete except as follows _____

"(✓)  I reviewed the application and find the answers to be correct and complete.

"Signature /s/ Joseph J. Buemi"

As revealed above, Buemi checked the "box" indicating the answers on the application were *correct and complete* and then *signed* the letter and mailed it to Mutual of Omaha. It is undisputed an agent was not present so as to direct or hurry Buemi to sign the letter. The letter, policy and application were sent to Buemi at his home, he could read and review the letter and application at his leisure, then check the appropriate "box" and sign his name. There is also no question Buemi was a literate person fully capable of comprehending the consequences of his actions. In this respect it bears repeating Buemi was at one time a president of a corporation and was involved in numerous business ventures throughout his life. It is also undisputed Mutual of Omaha did not require an immediate response to the reverification letter and, therefore, Buemi had at his disposal all the time necessary to review, in an accurate and thorough manner, the correctness and completeness of the application.

Buemi's sole attempt to rebut the reverification letter was an averment to the effect said letter "was returned without any independent review of the medical questions and the letter signed without reading."

Buemi's signature and assent to the statement that the answers contained in the application were correct and complete serve, as a matter of law, as his adoption and ratification of the statements contained therein notwithstanding his claimed failure to review the application. The case of *Republic Mut. Ins. Co.* v. *Wilson* (1940), 66 Ohio App. 522, 20 O.O. 527, 35 N.E. 2d 467, is illustrative of this conclusion that Buemi's assent to the statement contained in the reverification letter indicating the application was "correct and complete" coupled with his signature serves as his warranty of the accuracy of such application. In *Wilson,* the insured sought to avoid answers set forth in his insurance application by claiming he did not provide the agent with any verbal answers at the time of the making of the application. The court rejected this contention and promulgated the following rule:

"*An insured,* making application for insurance, is bound by all the representations and warranties contained in the application even though he does not answer them specifically; *having signed the application, he adopts and ratifies all statements appearing above his signature.*" (Emphasis added.) *Wilson, supra,* at paragraph one of the syllabus.

In the case *sub judice,* in addition to the fact Buemi signed the application, his assent to the statement contained in the reverification letter that the application was "correct and complete" coupled with his signature of such statement in the letter serves as an additional warranty signifying his adoption and ratification of the correctness and completeness of the application in spite of Buemi's claimed failure to review such document prior to checking the appropriate box and signing the letter.

The foregoing rationale clearly proves as a matter of law Buemi knowingly made false answers to the questions contained in the application. Consequently, in accordance with *Prudential,* such false answers satisfy the statutory requirement set forth in R.C. 3923.14 that the answers be "willfully false" and "fraudulently made."

The remaining elements of the pentadactyl test enumerated in R.C. 3923.14 are that the false statement "[3] materially affects either the acceptance of the risk or the hazard assumed by insurer, [4] that it induced the insurer to issue the policy, and [5] that but for such false statement the policy would not have been issued." In this respect Mutual of Omaha included in

its summary judgment motion the affidavit of Stan Milne. Milne was the special underwriter in the Great Lakes Region of the Underwriting and Renewal Services Division in September 1983. It was at this time that Milne reviewed the insured's claim relative to medical bills Mutual of Omaha received from Marymount Hospital concerning claims for medical services to Buemi. Milne averred that had Mutual of Omaha been apprised of Buemi's previous medical history at the time the application was completed the policy would not have been issued. Milne substantiated this averment by including certain guidelines utilized by the insurer in its decision-making process. Based upon the insured's medical history these guidelines revealed coverage would not have been extended to Buemi, but for such false statements, and the only reason the policy was accepted was based upon such false statements.[1]

The insured's sole attempt to rebut Mutual of Omaha's foregoing sworn testimony was the following averment by Buemi contained in the affidavit attached to his brief in opposition to the insurer's summary judgment motion:

"1) In respect to the application for insurance, he made no willfully false statement; none that was fraudulently made, *nor did any statement made by him materially affect the acceptance of the risk or the hazard assumed by the Defendant;* no statement induced the Defendant to issue the policy; basically only one medical question was asked and that was answered truthfully."

This paragraph does not comply with the provisions of Civ. R. 56(E) which states in pertinent part as follows:

"Supporting and opposing *affidavits shall be made on personal knowledge,* shall set forth such facts as would be admissible in evidence, and *shall show affirmatively that the affiant is competent to testify to the matters stated therein.* Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. * * *." (Emphasis added.)

Buemi, as the insured, was neither competent to testify to the matters averred in paragraph one of the affidavit nor were such statements based upon personal knowledge. These self-serving statements do not satisfy the standard of proof required by Civ. R. 56(E); *Olverson* v. *Butler* (1975), 45 Ohio App. 2d 9, 74 O.O. 2d 11, 340 N.E. 2d 436. Moreover, Buemi had been previously cautioned that false statements in the application would result in cancellation of the policy.

Buemi offered no other sworn testimony rebutting the latter three elements of R.C. 3923.14, *viz.,* a false statement in a health insurance policy which, *inter alia,* "[3] materially affects either the acceptance of the risk

---

[1] In this respect Milne averred the applicable Underwriting Manual of Mutual of Omaha set forth the following guidelines:

"Page 76 under Chronic Obstructive Pulmonary Disease (COPD). Since the medical information revealed that Mr. Buemi had COPD within five years of the date of application, I referred to the 'within five years' classification and determined with just this condition, an 'N' rate under all coverage classifications was necessary. An 'N' rate, as used in this Manual, means that no coverage can be offered. See page 4 of the Manual.

"Page 132 under Diabetes Mellitus. Since the medical information revealed Mr. Buemi had controlled diabetes at the time of application, I referred to the 'controlled, no complications' classification and determined with just this condition, an 'N' rate under the column entitled 'Major Medical' was necessary. An 'N' rate, as used in this Manual, means that no coverage can be offered. See page 4 of the Manual."

or the hazard assumed by the insurer, [4] * * * induced the insurer to issue the policy, and [5] * * * but for such false statement the policy would not have been issued." R.C. 3923.14. When Buemi's defective averment relative to the latter three elements of R.C. 3923.14 and the insurer's affidavit testimony in the same respect are coupled with the reverification letter they reveal Mutual of Omaha clearly proved as a matter of law all the elements of R.C. 3923.14. The insurance policy was, therefore, void *ab initio*. Construing the evidentiary materials most strongly in Buemi's favor, reasonable minds can reach only one conclusion, *viz.*, the insured falsely answered the questions in the application and, therefore, Mutual of Omaha was entitled to summary judgment as a matter of law. Civ. R. 56.

*Judgment affirmed.*

PATTON, P.J., and MATIA, J., concur.