936 F.2d 573
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
GOLDEN RULE INSURANCE COMPANY, Plaintiff-Appellee,
v.
Robert S. MICHNAY and St. Luke's Hospital, Defendants-Appellants.
 Nos. 90-3276, 90-3291.
 United States Court of Appeals, Sixth Circuit.
 June 26, 1991.
 
 Before BOYCE F. MARTIN, Jr. and BOGGS, Circuit Judges, and BELL, District Judge.*
 PER CURIAM.
 
 
 1
 Defendants Robert Michnay[1] and St. Luke's Hospital (sometimes "the Hospital") appeal separately from the district court's adverse rulings. The district court granted summary judgment to Golden Rule in its suit against Michnay asking for a declaratory judgment that an insurance policy issued by Golden Rule in favor of Michnay was procured through willful fraud, and hence void ab initio. The district court then dismissed with prejudice the Hospital's counterclaims against Golden Rule for the amounts that would have been paid to it had the policy for Michnay been valid, and it dismissed without prejudice the Hospital's crossclaims against Michnay for the same amount. For the following reasons, we affirm the district court in respect to Michnay, but reverse in respect to St. Luke's.
 
 
 2
 * Michnay applied for an insurance policy from Golden Rule on January 26, 1987. The application included a number of questions regarding Michnay's prior medical history. These questions included:
 
 
 3
 14. Has any person named in # 1 [person to be covered by policy] within the last 10 years, had any indication, diagnosis, or treatment of:
 
 
 4
 b) any disorder of the heart or circulatory system, including high blood pressure, anemia, or other blood disorder, heart attack, heart murmur, chest pain, irregular heartbeat, varicose veins or phlebitis?
 
 
 5
 * * *
 
 
 6
 * * *
 
 
 7
 k) alcohol or drug dependency, abuse, overdose or reaction?
 
 
 8
 * * *
 
 
 9
 * * *
 
 15. Is any person named in # 1 currently:
 
 10
 b) taking medication or medical treatment of any kind?
 
 
 11
 * * *
 
 
 12
 * * *
 
 
 13
 17. Has any person named on this application seen a doctor in the last 5 years? If yes, give the details and the names and addresses of all doctors seen. Give details in 18 below. Include dates and reasons seen and results.
 
 
 14
 Michnay answered no to questions 14 and 15. In answer to question 17, he merely stated that he had seen Dr. Charles Becker for general check ups. Michnay signed the application under a statement that:
 
 
 15
 I represent that the statements and answers in this application are true and complete to the best of my knowledge and belief.
 
 
 16
 After receipt of the application, Golden Rule investigator Joan Frederick called Michnay on February 9, 1987 to confirm the truth of his application statements. Frederick stated in an affidavit that Michnay confirmed the truth of all of his application statements. Michnay also specifically confirmed that he had not seen a doctor or taken medication for any reason in the previous two years, and that he believed he would not have to see a doctor in the following six months.
 
 
 17
 Michnay filed an amendment to his application on February 14, 1987, but did not change any of his answers to the above questions. He signed his amendment below a statement that:
 
 
 18
 I further represent that the answers and statements contained in the original application, except to the extent they are amended above, are still correct, complete and wholly true to the best of my knowledge and belief.
 
 
 19
 An underwriter for Golden Rule, Donna Melloy, approved Michnay's application on February 19, 1987.
 
 
 20
 Michnay's answers to the above questions were false. With respect to question 14(b), Michnay had been receiving care from doctors at the Veterans Administration ("V.A.") hospital during the previous ten years for arrythmia and high blood pressure stemming from a 1974 heart attack. With respect to question 14(k), Michnay had received treatment for alcoholism on June 8, 1978, nine and one-half years prior to the application date. With respect to question 15(b), Michnay had been taking both Quinidine for his irregular heartbeat and Inderal for his high blood pressure for the preceding ten years. Finally, his failure to disclose his regular visits to the V.A. hospital made false his answer to question 17.
 
 
 21
 After the policy was issued, Michnay's new doctor, Alan Rosenfield, discovered cerebral vascular disease and an abdominal aortic aneurysm. Rosenfield then referred Michnay to a peripheral vascular surgeon, Dr. James Heller, who discovered upon further examination bilateral cartoid bruits and peripheral vascular disease in Michnay's leg. Heller testified in his deposition that Michnay told him he had chronic premature ventricular contractions and was taking Quinidine to control that problem.
 
 
 22
 Michnay was admitted to St. Luke's Hospital three times in December 1987 and January 1988 to permit Dr. Heller to perform surgery related to Michnay's heart and circulation ailments. Michnay's discharge forms, written by Dr. Heller, reflect his extensive medical history. Michnay assigned his rights under the Golden Rule policy to St. Luke's upon admission. The bill for all three stays was $64,430.38.
 
 
 23
 St. Luke's called Golden Rule each time Michnay was admitted to confirm his coverage. Golden Rule has produced a transcript of the first call between "Joan" of Golden Rule and "Sue" of St. Luke's. In addition to providing Sue with some of the details of Michnay's policy, Joan advised Sue that:
 
 
 24
 1) "this is not a guarantee that payment will be made";
 
 
 25
 2) "There are many reasons why benefits may not be paid on any given claim. Thus we cannot assume that benefits will be paid";
 
 
 26
 3) "pre-existing conditions are not covered in the first year";
 
 
 27
 4) "there is a two-year contestable period on this policy"; and,
 
 
 28
 5) "his file is under investigation at this time."
 
 
 29
 The Hospital amended its counterclaims to remove any claim that Golden Rule made an unconditional promise to pay during this conversation. St. Luke's states that it admitted Michnay in reliance upon the calls it placed to Golden Rule for confirmation of Michnay's policy.
 
 
 30
 Golden Rule investigated Michnay's policy in early 1988 and discovered his false statements. In a letter dated May 3, 1988, senior claims analyst Janice Koors informed Michnay that issuance of his policy had been induced by his false statements, and that the policy was voided from the date of issue. Golden Rule returned all of Michnay's premiums, but Michnay did not cash the check.
 
 
 31
 Golden Rule filed suit on May 16, 1988. St. Luke's moved to join as a party defendant in November 1988, and its motion was granted in December 1988. St. Luke's filed counterclaims against Golden Rule and crossclaims against Michnay in January 1989. The Hospital's counterclaims accuse Golden Rule of negligence, negligent misrepresentation, and promissory estoppel, and allege that Golden Rule is equitably estopped from proclaiming that Michnay's policy is void as regards St. Luke's. Golden Rule filed a timely answer to the Hospital's counterclaims, raising as one of its defenses under FED.R.CIV.P. 12(b)(6) that the Hospital's suit failed to state a claim upon which relief can be granted.
 
 
 32
 Golden Rule moved for summary judgment against Michnay on October 14, 1988. Golden Rule filed supporting documents, among which were two affidavits from two Golden Rule employees. Jayne Brochin, an underwriter for Golden Rule, averred that Michnay would have been declined coverage had the facts underlying his misstatements been known. Brochin averred that this decision would have been made based upon underwriting guidelines in existence at the time. A copy of those guidelines was not attached to the affidavit. Another underwriter for Golden Rule, Donna Melloy, averred that she underwrote Michnay's policy on the basis of his representations in the application, phone call, and application amendment. Golden Rule did not file any motion to dismiss the Hospital's counterclaims.
 
 
 33
 The district court granted Golden Rule's motion for summary judgment against Michnay on February 28, 1990. The court also dismissed with prejudice sua sponte the counterclaims against Golden Rule because "St. Luke's has based these counterclaims upon its status as assignee of Michnay's insurance benefits," and its claims could not withstand the ruling that Michnay's policy was void ab initio. The court divested itself of jurisdiction over the Hospital's crossclaims because the dismissal of Golden Rule left two non-diverse Ohio citizens in federal court with no federal question involved. The timely appeals followed, and were consolidated upon grant of a motion to consolidate.
 
 II
 
 34
 * We possess diversity jurisdiction over this case, 28 U.S.C. Sec. 1332, because Golden Rule is an Illinois corporation and both Michnay and St. Luke's reside or are incorporated in Ohio. Accordingly, we are limited to applying the law of the appropriate state. Erie Railroad v. Tompkins, 304 U.S. 64 (1933). All parties agree that Ohio law governs this case.
 
 B
 
 35
 We believe that Golden Rule's policy in favor of Michnay was void ab initio because of the operation of Ohio Revised Code Sec. 3923.14. This section reads in pertinent part as follows:
 
 
 36
 The falsity of any statement in the application for any policy of sickness and accident insurance shall not bar the right to recovery thereunder, or be used in evidence at any trial to recover upon such policy, unless it is clearly proved that such false statement is willfully false, that it was fraudulently made, that it materially affects the risk or the hazard assumed by the insurer, that it induced the insurer to issue the policy, and that but for such false statement the policy would not have been issued.
 
 
 37
 O.R.C. Sec. 3923.14.
 
 
 38
 The burden is on the insurance company to prove by clear and convincing evidence that each element is satisfied. Pope v. Reserve Life Insurance Co., 120 Ohio App. 394, 202 N.E.2d 708 (1963); Prudential Insurance Company of America v. Vitantonio, No. 8-117, 1982 WESTLAW 5873 (Ohio App. March 31, 1982). This section has been interpreted by the Ohio Courts of Appeal as establishing that a false statement is "willfully false" and "fraudulently made" if the applicant knew that the statements were false. Prudential Insurance Company of America v. Carr, 30 Ohio Op.2d 373, 199 N.E.2d 412 (Ct. of Common Pleas 1964); Buemi v. Mutual of Omaha Insurance Co., 37 Ohio App.3d 113, 524 N.E.2d 183 (1987). Evidence that an applicant confirms the truth of his false statements to employees of the insurance company via telephone or letter has been used to support a determination that the applicant submitted knowingly false statements. Buemi, 524 N.E.2d at 188-89.
 
 
 39
 It is undisputed that Michnay knew that the information he submitted on his application was false. Michnay attempts to distinguish Prudential and Buemi by arguing that his intent was not fraudulent because he had a good faith belief that the information was not required. For example, he argues that he did not think the visits to the V.A. or the information regarding the medication were required to be reported because they concerned a heart attack that occurred more than ten years before the application, and that his treatment for alcoholism wasn't required because it occurred nine and one-half years before his application, making it a "borderline situation." Michnay also argues that he was asymptomatic regarding his heart condition and blood pressure, making him unaware that he had those conditions during the ten year application period.
 
 
 40
 Michnay's attempts to distinguish Prudential and Buemi fail. Ohio has not adopted a "good faith" component to the "willfully false" and "fraudulently made" elements of Sec. 3923.14, and it has left no hints that it might do so in the future. Prudential and Buemi are quite clear that knowledge of the falsity is sufficient to satisfy these elements. It is also of no account that, construing all doubts about his sympotology in Michnay's favor, as we must on review of a motion for summary judgment, Michnay may have been unaware that he was still suffering effects from his 1974 heart attack. Michnay's knowledge regarding any illness or symptoms was immaterial to answering questions regarding the treatment he had received or was receiving, and the medication he was taking.
 
 
 41
 We also believe that Golden Rule has proved by clear and convincing evidence that the remaining three elements of Sec. 3923.14 have been satisfied. These elements are that the false statements materially affected the risk assumed by the insurer, the statements induced the insurer to issue the policy, and that the policy would not have been issued but for the false statements. The court in Buemi found that these elements were satisfied by an affidavit from one of Mutual of Omaha's underwriters averring that the policy would not have been issued had he been aware of the actual facts. Buemi, 524 N.E.2d at 189-90. It also found that mere statements from the applicant in an unsupported affidavit that his false statements did not cause Mutual of Omaha to issue the policy were insufficient to create a dispute of fact sufficient to defeat a motion for summary judgment. Buemi, 524 N.E.2d at 190. Golden Rule has met this burden through submission of Melloy's and Brochnin's affidavits.
 
 
 42
 Michnay attempts to distinguish Buemi on its facts. He notes that the affidavit in Buemi was supported by a copy of the guidelines used by underwriters to determine if a policy should be issued. Golden Rule did not attach a copy of its guidelines to the two affidavits. Michnay argues that the affidavits are therefore unsupported, and cannot establish conclusively that the policy was issued in reliance on his false statements.
 
 
 43
 Buemi did not state whether affidavits without attached guidelines could establish that a policy would not have been issued but for the false statements. Two subsequent unreported cases have dealt with the sufficiency of affidavits in conclusively establishing the final elements of Sec. 3923.14, with different results. The Court of Appeals of Cuyahoga County stated, in Heekin v. Mutual of Omaha Insurance Co., No. 54954, 1989 WESTLAW 4157 (Jan. 19, 1989), that an unrefuted affidavit of an agent of the insurance company can conclusively satisfy the final elements. However, the affidavit in Heekin was substantiated by references to the company's Underwriting Manual. The Court of Appeals of Montgomery County stated in Thompson v. New York Life Insurance Co., No. CA 11416, 1989 WESTLAW 148033 (Dec. 4, 1989) that an affidavit alone cannot establish the final elements without pointing to evidence that establishes some relationship between the "past infirmity allegedly omitted from the application and the infirmity forming the basis of the claim." Thompson, 1989 WESTLAW 148033 at *5.
 
 
 44
 We hold that Ohio would not require the attachment of a copy of underwriting guidelines to an affidavit that otherwise establishes that the policy in question would not have been issued but for the false statements. Neither Buemi nor Heekin rely on the inclusion of guidelines copies to reach their conclusion. Rather, both courts emphasized that the statements in the affidavits were unrefuted by any evidence provided by the applicant. If such statements are not consistent with the insurance company's underwriting guidelines, the applicant can certainly obtain a copy of the guidelines in discovery and produce it for the court.
 
 
 45
 We also hold that Golden Rule has met the requirement set forth in Thompson that the omission be material to the claim. Michnay did not disclose his extensive medical history regarding heart and blood pressure problems. The claim in questin involves three surgeries to repair damage to Michnay's circulatory system. Clearly, the omitted material would have been material to the issuance of a policy covering such closely related surgeries.
 
 III
 
 46
 Reviewing the court's dismissal of the Hospital's counterclaims is more difficult because the court did not give a clear rationale supporting its decision. As a court sitting in diversity, we must apply Ohio law to resolve all legal questions in this case. However, the court below did not argue that Ohio law mandated dismissal. Instead, it merely stated without support that the counterclaims were based upon Michnay's assignment of his rights under the insurance policy, and that the Hospital's claims could not survive a determination that Michnay never had a valid policy to assign.
 
 
 47
 We cannot affirm this dismissal because the Hospital's claims were tort claims, not contract claims. St. Luke's alleges that Golden Rule was negligent in providing confirmation of Michnay's insured status without first investigating his application statements; that Golden Rule is liable to it under the theory of promissory estoppel[2]; that Golden Rule is liable to it under the theory of negligent misrepresentation[3]; and that Golden Rule is equitably estopped from using a determination that Michnay's policy was void ab initio against St. Luke's. All of these claims are tort claims, and all of them appear to be sustainable without specific proof that a contract existed between Golden Rule and St. Luke's. There is no a priori reason to suppose that Ohio law adopts Golden Rule's position that a promise made regarding a contract does not survive the failure of the contract even if the promise produces reasonable and detrimental reliance, or that negligent action respecting a contract is no longer negligent if that contract was void ab initio. Ohio could choose to adopt such rules,[4] or upon a close examination of the law we might find that it has already done so. However, none of the parties have chosen to argue extensively what Ohio's law would or would not permit, and it is not the province of the appellate courts to conduct sua sponte examinations of the applicable law. We therefore reverse the district court's dismissal of the counterclaims.
 
 
 48
 Golden Rule asks us to hold that the court's decision was not a ruling under FED.R.CIV.P. 12(b)(6), but was rather a grant of summary judgment under FED.R.CIV.P.956. It notes that FED.R.CIV.P. 12(b) states:
 
 
 49
 If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56. (Emphasis added).
 
 
 50
 Golden Rule notes that it tendered the transcript of the telephone conversation between Joan and Sue to the court, and it argues that its 12(b)(6) defense was thereby converted into a motion for summary judgment under FED.R.CIV.P. 56. Golden Rule also argues that the conditional statements made by Joan regarding the extent of Golden Rule's liability under the policy for Michnay: 1) remove any possibility that it supplied an unconditional promise to St. Luke's; 2) made St. Luke's aware of the actual facts regarding the limitations on Michnay's policy; and, 3) informed St. Luke's that Michnay's policy was being investigated at the time of his admission to St. Luke's, thereby defeating all four of the Hospital's claims.
 
 
 51
 We reject this argument for three reasons. First, the court did not refer to the transcript in dismissing the counterclaims. This strongly suggests that it did not treat Golden Rule's 12(b)(6) defense as a motion for summary judgment, or in any other way dismiss the Hospital's claims because of the content of the telephone call. Second, FED.R.CIV.P. 12(b) permits defenses assertable thereunder to be presented either via answer or motion. 5A C. Wright, A. Miller and M. Kane, Federal Practice and Procedure Sec. 1347 (1991). Only 12(b)(6) motions can be converted into motions for summary judgment, and Golden Rule never made a 12(b)(6) motion. Third, "[i]t is important that the court give the parties reasonable notice of the changed status of the motion and a 'reasonable opportunity to present all material made pertinent to such a motion by Rule 56.' " Federal Practice and Procedure at Sec. 1366. This avoids any unfair surprise because of the conversion, and affords a party the opportunity to submit materials permissible under FED.R.CIV.P. 56 in opposition to summary judgment. Dayco Corp. v. Goodyear Tire and Rubber Co., 523 F.2d 389, 392-93 (6th Cir.1975) ("where a party is likely to be surprised by the proceedings, notice is required").
 
 
 52
 Here, St. Luke's had no notice that the court was considering dismissing its counterclaims, and St. Luke's did not offer any affidavits responding to either Golden Rule's answer to its complaint or to the conversation itself.[5] Accordingly, it is our belief that St. Luke's was surprised by the dismissal, and notice would have been required to convert Golden Rule's motion in accordance with FED.R.CIV.P. 12(b). See Sims v. Mercy Hospital of Monroe, 451 F.2d 171 (6th Cir.1971) (conversion of motion to dismiss to motion for summary judgment with no notice, relying on statement at oral argument, held to be error).
 
 
 53
 This holding is not contrary to our decision in Wright v. Holbrook, 794 F.2d 1152, 1156 (6th Cir.1986). In Wright, we held that a plaintiff could not raise for the first time on appeal an argument that he was surprised by the conversion of a motion to dismiss into one for summary judgment. We held this in part because the plaintiff was aware that materials outside of the pleadings had been submitted to the district court. While St. Luke's was aware that Golden Rule had submitted a copy of the telephone conversation to the court, there was no motion to dismiss before the court. In Wright, the defendant had made a motion to dismiss and accompanied it with attached materials, thereby putting the plaintiff on notice that his claim was in some jeopardy.
 
 
 54
 We must also reverse the court's dismissal without prejudice of the Hospital's crossclaims against Michnay. The only reason given for the dismissal of the crossclaims was that the resolution of the first two questions left two non-diverse parties before the court. As our reversal regarding the counterclaims has restored diversity to this case, the crossclaims are still legitimately before this court.
 
 IV
 
 55
 For the foregoing reasons, we AFFIRM the district court's grant of summary judgment with respect to Golden Rule's suit against Michnay. We REVERSE the district court's judgments with regard to the Hospital's counterclaims and crossclaims. We REMAND this case to the district court for further proceedings consistent with this opinion.
 
 
 
 *
 The Honorable Robert Holmes Bell, United States District Judge for the Western District of Michigan, sitting by designation
 
 
 [1]
 We received a suggestion of death for Michnay on February 1, 1991, noting that he had died on December 2, 1990. We have granted a motion to substitute Linda Michnay, his daughter and executrix, as a party to this appeal
 
 
 [2]
 Ohio has adopted the doctrine of promissory estoppel as established by section 90 of the Restatement of Contracts. Cincinnati Fluid Power, Inc. v. Rexnord, Inc., 797 F.2d 1386, 1391 (6th Cir.1986), citing McCroskey v. State, 8 Ohio St.3d 29, 456 N.E.2d 1204 (1983). Section 90 establishes that "a promise which the promisor should reasonably expect to induce action or forebearance on the part of the promisee ... and which does induce such action or forebearance is binding if injustice can be avoided only by the enforcement of the promise."
 
 
 [3]
 Ohio has adopted the tort of negligent misrepresentation as established by the Restatement (Second) of Torts, Sec. 552. Hadden View Investment Co. v. Coopers & Lybrand, 70 Ohio St.2d 154, 436 N.E.2d 212 (1982). That section reads in relevant part:
 (1) One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability to pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competency in obtaining or communicating the information.
 
 
 [4]
 For example, the Northern District of Illinois has held that under Illinois law an assignee may not recover under the tort of negligent misrepresentation when the negligent misrepresentation involves an assignment of an insurance policy that was void ab initio. Such an assignment confers no contract rights on the assignee, and cannot give rise to an action under that tort. McHenry Hospital v. Metropolitan Life Insurance Company, 578 F.Supp. 122 (N.D.Ill.1983)
 
 
 [5]
 St. Luke's did amend its first count regarding the first admission of Michnay because of the conversation transcript. Because there was no indication that St. Luke's expected its claims to be dismissed at this stage in the proceedings, and hence no conversion to a summary judgment motion ever occurred, we need not pass on Golden Rule's contention that this amendment constitutes an admission under FED.R.CIV.P. 56