The following timely appeal arises from the decision of the Mahoning County Court of Common Pleas granting summary judgment in favor of appellees American General Life and Accident Insurance Company ("AGLA") and Linda Jackson ("Ms. Jackson"). For the reasons set forth below, the decision of the trial court is affirmed.
 I. FACTS
This matter arises out of the purchase of three insurance policies by Jamal Abdul El-Ha'Kim (appellant) from Ms. Jackson who was an insurance agent working for AGLA. On May 11, 1994, appellant applied for a hospital indemnity policy through Ms. Jackson. At that time, Ms. Jackson met with appellant in his home and assisted in the completion of the application form. As part of the application process, a series of questions were read off of the form by Ms. Jackson to appellant inquiring as to pre-existing conditions and any recent medical treatment by a physician or medical facility. The application indicates that all responses were in the negative as to these areas of concern. Appellant then signed the application and it was submitted for processing. AGLA subsequently approved the policy of insurance on June 12, 1994.
Appellant also applied for an accident policy on May 15, 1994, and a surgical rider on June 12, 1994. A similar procedure was followed by Ms. Jackson for the completion and submission of both applications. As was the case with the hospital indemnity application, all answers to questions regarding pre-existing conditions and prior medical treatment were in the negative.
The record reveals that after the insurance policies went into effect, appellant was involved in an automobile accident. Appellant submitted a claim form in regards to this occurrence and payment was made by AGLA. On August 14, 1995, another claim was made to AGLA by appellant. Apparently appellant underwent a procedure for the removal of a foreign object from his foot. When the claim was submitted to AGLA for payment, certain records which documented the procedure conducted were attached to the claim form. It was through these records that AGLA was made aware of appellant's history of diabetes and heart disease which pre-dated the issuance of the insurance policies. Based upon this information, AGLA delayed payment on appellant's claim and began an investigation into appellant's pre-existing disabilities.
Based upon AGLA's decision to temporarily deny payment on the claim, appellant proceeded to file a pro se complaint against both AGLA and Ms. Jackson on November 2, 1995. In appellant's complaint, he raised allegations of fraud and negligence as to the issuance of the policies and the failure to pay under such. AGLA responded with an answer on December 21, 1995 as did Ms. Jackson on February 1, 1996. During the course of the proceedings in the case at bar, AGLA completed its investigation and determined that in fact appellant had provided false answers to the questions on the insurance applications as related to his pre-existing conditions of diabetes and heart disease. Hence, it denied coverage under the policies, rescinded the policies and refunded all premiums paid by appellant.
Following the completion of discovery by all parties, AGLA and Ms. Jackson both filed motions for summary judgment. Although appellant filed objections to these motions, the trial court granted same on December 13, 1996. This timely appeal followed on January 9, 1997. Appellant raises three assignments of error on appeal.
 II. ASSIGNMENT OF ERROR NUMBER ONE
Appellant's first assignment of error reads:
 "THE TRIAL COURT COMMITTED PREJUDICIAL ERROR IN DETERMING (sic) THAT THE DEFENDANT AMERICAN GENERAL LIFE AND ACCIDENT COMPANY, WAS ENTITLED TO SUMMARY JUDGMENT AS A MATTER OF LAW."
In appellant's first assignment of error, it is argued that any false statements on the initial insurance applications as related to pre-existing conditions were the product of the insurance agent. Appellant asserts that Ms. Jackson was aware of his conditions and, however, chose to ignore such in completing the insurance application. It is further asserted that appellant played no role in colluding with the company's agent in providing the answers to the application questions. As support for this position, appellant points to the affidavit of an acquaintance, Barbara Randall, which was attached to appellant's objection to AGLA's summary judgment motion. According to Ms. Randall, Ms. Jackson had prior knowledge of appellant's conditions as she was present when appellant took insulin and when discussions took place regarding his heart condition. Based upon these circumstances, appellant argues that a genuine issue of material fact existed as to the origin of the answers on the application as well as whether or not the agent had prior knowledge of appellant's conditions.
 A. STANDARD OF REVIEW
In considering a motion for summary judgment, Civ.R. 56 (C) controls and provides that before such a motion be granted, it must be determined that: (1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made. State ex rel. Parsons v. Fleming (1994),68 Ohio St.3d 509, 511. Additionally, the party moving for summary judgment has the responsibility of clearly showing an entitlement to the granting of its motion:
 "[A] party seeking summary judgment, on the ground that the nonmoving party cannot prove its case, bears the initial burden of informing the trial court of the basis for its motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential element(s) of the nonmoving party's claims. The moving party cannot discharge its initial burden under Civ.R. 56 simply be making a conclusory assertion that the nonmoving party has no evidence to prove its case. Rather, the moving party must be able to specifically point to some evidence of the type listed in Civ.R. 56(C) which affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving party's claims. If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied. However, if the moving party has satisfied its initial burden, the nonmoving party then has a reciprocal burden outlined in Civ.R. 56(E) to set forth specific facts showing that there is a genuine issue for trial and; if the nonmovant does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party." Dresher v. Burt
(1996), 75 Ohio St.3d 280, 293.
Due to the fact that summary judgment is designed to cut short the litigation process, trial courts should award such with caution, resolving doubts and construing evidence in favor of the nonmoving party. Murphy v. Reynoldsburg (1992), 65 Ohio St.3d 356,360. In that a grant of summary judgment disposes of a case as a matter of law, this court's analysis on appeal is conducted under a de novo standard of review. Grafton v. Ohio Edison Co.
(1996), 77 Ohio St.3d 102, 105.
 B. APPLICABLE LAW
Pursuant to R.C. 3923.14, an insurer may be permitted to cancel an insurance policy providing for health and/or accident benefits if certain requirements are met. The statute provides in pertinent part:
 "The falsity of any statement in the application for any policy of sickness and accident insurance shall not bar the right to recovery thereunder * * * unless it is clearly proved that such false statement is willfully false, that it was fraudulently made, that it materially affects either the acceptance of the risk or the hazard assumed by the insurer, that it induced the insurer to issue the policy, and that but for such false statement the policy would not have been issued." (Emphasis added.)
An individual will be viewed as having ratified the answers on an insurance application if the individual signs the application. Ed Schory Sons, Inc. v. Society Natl. Bank (1996),75 Ohio St.3d 433, 441. Furthermore, an insurance applicant's signature and assent that the statements contained in the application are correct serves, as a matter of law, as his adoption of the statements notwithstanding a claimed failure to review the application. Buemi v. Mutual of Omaha Ins. Co. (1987),37 Ohio App.3d 113, 119 citing Republic Mut. Ins. Co. v. Wilson
(1940), 66 Ohio App. 522. Having signed the application, the individual adopts and ratifies all statements appearing above the signature regardless of whether he specifically provided answers.Id. On a similar note, once the insurance policy is issued and has been accepted by the insured, he is presumed to know the policy's contents and is bound by its terms. Travelers' Ins. Co.v. Myers (1900), 62 Ohio St. 529, 541 (overruled on other grounds by Employers' Liab. Assur. Corp. v. Roehm (1919), 99 Ohio St. 343). See also, Ohio Farmers' Ins. Co. v. Titus (1910), 82 Ohio St. 161.
Similarly, in the event an insured provides a correct answer to the agent who records a false answer without the insured's knowledge, the insured has a duty to report the falsity upon discovery. Beard v. N.N Investors Ins. Co., Inc. (1985), 21 Ohio App.3d 219,220 citing Redden v. Constitution Life Ins. Co.
(1961), 172 Ohio St. 20. In the event the insured fails to notify the company, he will be viewed as a participant in the fraudulent activity. Id. The Ohio Supreme Court has also held that nothing more completely vitiates a contract of insurance than false answers to material questions in an insurance application. Id.
Failure to disclose such conditions which affect the risk makes an insurance contract voidable at the insurer's option. Stipcich v.Metropolitan Life Ins. Co. (1928), 277 U.S. 311, 314.
 C. ANALYSIS
A review of the record before the trial court reveals that the court properly concluded that AGLA was entitled to judgment as a matter of law. Even when viewing the evidence in a light most favorable to appellant, all elements of R.C. 3923.14 are established.
It is undisputed that appellant signed applications for insurance on May 11, 1994; May 15, 1994 and June 12, 1994. Throughout appellant's deposition testimony, admissions are made that all signatures on the applications are genuine. As such, as a matter of law the signatures on the applications act as appellant's adoption and ratification of the answers to all questions therein. Ed Schory Sons, Inc. and Buemi, supra. It is inconsequential as to whether appellant actually read over the applications prior to signing them. Id. As the Ohio Supreme Court stated in Dice v. Akron, Canton Youngstown RR. Co. (1951)155 Ohio St. 185:
 "A person of ordinary mind cannot say that he was misled into signing a paper which was different from what he intended to sign when he could have known the truth by merely looking when he signed. * * * If this were permitted, contracts would not be worth the paper on which they are written. If a person can read and is not prevented from reading what he signs, he alone is responsible for his omissions to read what he signs." Id. at 191.
At no point does appellant contend that he is illiterate. On the contrary, during his deposition appellant confirms that he can in fact read. (Depo. Tr. at 48). Furthermore, at numerous junctures appellant indicates that he performs paralegal work for various individuals. Hence, he clearly had the ability to read the applications. A review of the applications reveals that they are clearly drafted and consist solely of the front and back of a single sheet of paper. Therefore, appellant was not dealing with a complex legal document which would take a prolonged period of time to review but rather a simple form. Appellant's decision not to read the hospital indemnity or accident applications does not absolve him of the falsity of the information contained therein.
Additionally, while appellant denies reviewing the hospital indemnity or accident applications, he admits to having read the application for the surgical rider which was signed on June 12, 1994. (Depo. Tr. at 70). In that this application also contained false statements as to pre-existing conditions and prior treatment, appellant had a duty as of June 12, 1994 to report the misstatements to AGLA. Having failed to do so, appellant as a matter of law became a participant in the fraudulent activity.Beard and Redden, supra. Thus, this is not a situation in which the false statements were solely the product of the insurance agent's actions. Furthermore, the outcome of this case is not dependent upon whether or not appellant read the application but failed to report the false statements to the insured. As previously discussed appellant will be deemed to have adopted the false statements by applying his signature to a form which he had the opportunity to review. As a result, it must be held that the false statements were willfully false and were fraudulently made for purposes of our R.C. 3923.14 analysis.
As to the remaining elements under R.C. 3923.14, it is clear that questions pertaining to pre-existing conditions and prior treatments, as well as false answers thereto, materially affected the acceptance of the risk assumed by AGLA. Furthermore, AGLA introduced an uncontested affidavit of its technical specialist which stated that AGLA was induced to issue the policy as a result of appellant's false answers regarding diabetes, heart conditions, high blood pressure, etc. The affidavit further stated that pursuant to AGLA's underwriting standards, the policies would not have been issued but for the false statements. Based upon this information, even when the evidence is construed in a light most favorable to appellant, necessitates a conclusion that all of the elements present in R.C. 3923.14 have been sufficiently established. Therefore, it must be held that the trial court properly determined that summary judgment in favor of AGLA was appropriate.
It should also be noted that although appellant presents testimony via affidavit that Ms. Jackson was aware of appellant's pre-existing conditions and therefore participated in the fraudulent activity, such does not bind AGLA to continue coverage under the policies. In agency law, an agent may bind the principal when he is acting within the scope of his actual authority. Damon's Missouri. Inc. v. Davis (1992), 63 Ohio St.3d 605,608 citing Saunders v. Allstate Ins. Co. (1958), 168 Ohio St. 55,58-59. Actual authority arises when it is expressly and directly granted to an agent in express terms by the principal or when it is impliedly granted as is reasonably necessary to carry into effect the power expressly conferred. Id. citing Spengler v.Sonnenberg (1913), 88 Ohio St. 192, 200-201. Similarly, a principal can become bound by the acts of his agent under the doctrine of apparent authority when the principal holds the agent out to the public as having authority to act and the third-party reasonably believed that the agent had such authority. MasterConsolidated Corp. v. Banc Ohio Natl. Bank (1991), 61 Ohio St.3d 570,576-577.
Assuming arguendo that Ms. Jackson did know of appellant's pre-existing conditions and treatment but nonetheless chose to provide the incorrect information on the form, said actions cannot serve to bind AGLA to continue providing coverage under the policies at issue. In each of the insurance applications at issue language similar to the following was included in close proximity to where appellant signed the forms:
 "No agent has authority to waive any answer or otherwise modify this application, or to bind the Company in any way by making any promise or representation which is not set out in writing in this application."
As this language clearly indicates, if in fact Ms. Jackson advised appellant that he need not worry about his pre-existing conditions and then proceeded to mark the inappropriate answers, these actions cannot bind AGLA. The language employed by the insurer makes it evident that agents of the company do not have any type of authority to participate in this type of act. By including this terminology in the applications, AGLA essentially conveyed to any potential applicants that no insurance agent had actual or apparent authority to go beyond or outside of the terms of the application. Consequently, Ms. Jackson's actions cannot be imputed to AGLA and provide no grounds for holding the company liable.
While it may be unfortunate that appellant paid premiums for a period of time only to have his insurance policies rendered void, this court through its decision seeks to discourage applicants from colluding with agents when completing insurance applications. Had this been an occasion, or for that matter should the appropriate circumstances arise, where an insured truthfully answered the questions posed by the agent and then signed a blank application only to have the agent misstate the answers, this court would not hesitate to find in the insured's favor. However in the case at bar, appellant clearly had numerous opportunities to review the answers provided on the application. Appellant chose not to avail himself of the opportunity to bring the false statements to light. When such opportunities are afforded to read and review the application to assure the accuracy of its contents, this court will not reward the insured by finding in his favor. See Dice, supra.
Appellant's first assignment of error is without merit.
 III. ASSIGNMENT OF ERROR NUMBER TWO Appellant's second assignment of error reads: "THE TRIAL COURT COMMITTED PREJUDICIAL ERROR IN DETERMING (sic) DEFENDANT AMERICAN GENERAL LIFE AND ACCIDENT COMPANY, WAS ENTITLED TO SUMMARY JUDGMENT AFTER WAIVER OF RIGHT TO RESCIND."
Appellant next argues that AGLA waived any right to rescind the policy through various actions it had taken subsequent to the issuance of the insurance policies. It is first argued that AGLA was placed on notice on two separate occasions as to appellant's pre-existing conditions. The initial notice is alleged to have occurred shortly after the policies went into affect when appellant presented a claim in regards to an automobile accident. AGLA was allegedly put on notice a second time in August 1995 when appellant had surgery to his foot. Despite being put on notice on two separate occasions, AGLA continued to collect premiums until March of 1996. As such, appellant requests that this court hold that AGLA waived the right to rescind the policies.
Essential to any successful claim of waiver is a showing that an individual voluntarily relinquished a known right. State exrel. Athens Cty. Bd. of Commrs. v. Gallia, Jackson, Meigs, VintonJoint Solid Waste Mgt. Dist. Bd. of Directors (1996), 75 Ohio St.3d 611,616. A review of the record reveals that appellant is unable to establish the requisite conditions to illustrate a waiver by AGLA. Despite appellant's contention that AGLA was put on notice as of the date of the automobile accident, the record does not support such a holding. Although appellant did receive medical treatment in regards to the accident, AGLA was not put on notice of appellant's pre-existing conditions at that time. When appellant presented a claim for this incident, copies of the medical bills were attached to the claim form. In that there was no indication on the bills of any pre-existing conditions and AGLA had a duty to pay the claim, no medical records were ordered. The claim was merely paid in full by AGLA. While the medical provider may have been aware of a pre-existing condition and may have even indicated such in its medical records, this does not equate to notice to AGLA. The records were never requested nor was the insurance company required to review medical records in order to prevent a waiver from being established. Any knowledge the medical provider may have had of the pre-existing conditions may not be imputed to AGLA.
As to the second alleged notice in August of 1995, it was at this point in time that AGLA put appellant on notice that it was conducting an investigation as to potential undisclosed preexisting conditions. Although premiums continued to be collected during the investigation, AGLA informed appellant that an investigation was pending and that the bills for the August 1995 surgery were temporarily being denied. Upon completion of the investigation and discovery that appellant had provided false answers on the applications, appellant was advised that the policies were being rescinded and all premiums were being refunded.
At no time after AGLA was actually put on notice was appellant given the impression that he would continue to be insured regardless of the investigations results. Similarly, the record does not support a conclusion that AGLA voluntarily relinquished its right to rescind the policies. Premiums were collected only until completion of the investigation and were promptly refunded in their entirety. Waiver cannot be implied from AGLA's actions. Having failed to provide any evidence that the elements of a waiver were established, this court must hold that the trial court properly granted summary judgment as to AGLA. Therefore, appellant's second assignment of error is without merit.
 IV. ASSIGNMENT OF ERROR NUMBER THREE
Appellant's third assignment of error reads:
 "THE TRIAL COURT COMMITTED PREJUDICIAL ERROR IN DETERMING (sic) DEFENDANT LINDA JACKSON, WAS ENTITLED TO SUMMARY JUDGMENT ON GROUNDS THAT IT WAS `IRRELEVANT' AS TO ANY AND ALL MISREPRESENTATION'S (sic)."
In appellant's final assignment of error, it is argued that the trial court erred in granting summary judgment as related to Ms. Jackson. As support for this proposition, appellant points to the deposition testimony and affidavits of Barbara Randall and Shirley Grace. It was the opinion of both Ms. Randall and Ms. Grace that Ms. Jackson was aware of appellant's pre-existing conditions prior to completing the three insurance applications. Based on this testimony, appellant asserts that the trial court should not have granted summary judgment as a genuine issue of material fact remained to be litigated which directly related to the claims in his complaint. Ms. Jackson responds by maintaining that she had no knowledge of the conditions prior to accepting the insurance applications.
 A. APPLICABLE LAW
The case law as set forth under appellant's first assignment of error is for the most part applicable to the argument proposed under the third assignment of error. Whenever an individual signs an insurance application, he will be viewed as having ratified and adopted the answers therein notwithstanding a claimed failure to review the application. Ed Schory Sons, Inc., Republic Mut.Ins. Co. and Buemi, supra.
Furthermore, it has long been held that "whenever an agreement appears to be illegal, immoral or against public policy, a court of justice leaves the parties as it finds them." Kahn v.Walton (1889), 46 Ohio St. 195, 209 citing Roll v. Racruet,4 Ohio 400. Specifically as to contractual matters which are entered for fraudulent or illegal purposes, the law will aid neither party.Kahn, supra.
 B. ANALYSIS
As previously discussed, it is uncontested that appellant applied his signature to all three insurance applications. Hence, even if appellant chose not to read the one page forms prior to signing them, he will be viewed as having ratified and adopted the contents of the applications. Ed Schory Sons, Inc., supra. Said contents include an affirmance that "[a]ll statements and answers in this application are complete and true to the best of his or her [appellant's] knowledge and belief." Having signed and ratified the answers to all questions, this court cannot hold that the misstatements were the sole product of the agent's actions. Rather, this court must hold that at the very least appellant colluded with Ms. Jackson in providing the false answers on each insurance application.
Even if this court were to assume that Ms. Jackson knowingly placed false information on appellant's application, neither the trial court nor this court are in a position to hold that Ms. Jackson is liable as related to the claims set forth in appellant's complaint. Based upon our determination in assignment of error number one, it is clear that appellant's actions constituted fraudulent activity. As such, this court is not in a position to aid either party. Kahn, supra.
While it could be argued that Ms. Jackson is going unpunished for her alleged role in the activity at bar, this court must take a hands off approach under these circumstances in order to advance public policy. Although it is true Ms. Jackson's conduct will escape examination, the ultimate goal of this court should be to encourage the formation of lawful, binding contracts. If we were to intervene in this case and permit an action to continue against Ms. Jackson, we would in essence be promoting a system whereby insurance applicants would be rewarded for signing an application while ignoring the contents therein. So long as the applicant only took what could be viewed as a passive role in the fraudulent activity, he or she would be permitted to pursue an action against the insurance agent in the event coverage was terminated at a later date.
This is not the type of activity which this court wishes to reward as such would create a situation where contracts were not worth the paper on which they were written. See Dice, supra. On the contrary, it is our responsibility to encourage the creation of valid contracts which are sound in their origin. Furthermore, we have an obligation to deter fraudulent activity and to establish an environment where individual's know in advance that they act at their own peril. Accordingly, we are compelled to leave the parties as we find them. Therefore, appellant's third assignment of error is without merit.
For the foregoing reasons, the judgment of the trial court is affirmed.
Cox, P. J., dissents; see dissenting opinion.
Waite, J., concurs.
APPROVED:
 __________________________ JOSEPH J. VUKOVICH, JUDGE