OPINION
{¶ 1} Plaintiffs-appellants Frank Acton and Linda Acton appeal from the May 22, 2003, Judgment Entry of the Fairfield County Court of Common Pleas granting the Motion for Summary Judgment filed by defendant-appellee Medical Mutual of Ohio.
 STATEMENT OF THE FACTS AND CASE {¶ 2} On August 11, 2000, appellants Frank and Linda Acton signed an application for health insurance with appellee Medical Mutual of Ohio. The application specifically asked appellants the following question: "Have YOU, your SPOUSE, or any listed DEPENDENT at any time in the past 5 years been treated for or diagnosed as having any of the following conditions? Each condition must be checked (____) Yes or No." The application listed 89 conditions, including abnormal Pap Smears, depression, and back strains. In addition, the application asked appellants whether they had been treated for or told that they had "any other condition/disorder/disease not listed above within the past five years." Appellant checked the answer "No" in response to such question. Finally, the application contained the following language above the signature lines:
 {¶ 3} "I represent and warrant that I have read this Health and Life Insurance Application, and understand each of the questions and the answers to each of the questions I have given are complete and true to the best of my knowledge. I agree that any misrepresentations or concealment on this application will void my policy at the discretion of MMO and/or MLI. I further agree that if a policy is issued, it will be issued by MMO and/or MLI (if applicable) in full reliance and in consideration of the information, answers, and statements contained herein. I understand that this policy will be medically underwritten."
 {¶ 4} Based on appellants' representations on their application, appellee issued a health insurance policy to appellants with an effective date of September 1, 2000.
 {¶ 5} Shortly after the policy's effective date, appellant Linda Acton was treated by and/or consulted with numerous medical professionals for various medical conditions. During a routine audit, appellee concluded that appellant Linda Acton had failed to disclose the presence of medical conditions in applying for health insurance. Specifically, appellee concluded that appellant Linda Acton had failed to disclose back and neck problems, abnormal Pap Smear test results, and treatment for depression, anxiety and adult attention deficit disorder. In a letter to appellant Linda Acton dated July 19, 2001, appellee stated, in relevant part, as follows:
 {¶ 6} "Medical Mutual of Ohio's decision to accept your SuperMed One application for medical coverage was based upon our reliance of [sic] the information you provided on your application.
 {¶ 7} "An audit has revealed that you failed to disclose the presence of medical conditions which would have affected your acceptance for insurance. Please be advised that pursuant to the explicit terms and conditions stated on the application form, Medical Mutual of Ohio is exercising its right to rescind coverage retroactively effective September 1, 2001."
 {¶ 8} Thereafter, on March 4, 2002, appellants filed a complaint for breach of contract and bad faith against appellee in the Fairfield County Court of Common Pleas. Appellee filed a Motion for Summary Judgment which the trial court, pursuant to a Memorandum of Decision filed on May 13, 2003, granted. The trial court, in its decision, directed appellee's counsel to prepare a Judgment Entry. Thereafter, an Entry granting appellee's Motion for Summary Judgment was filed on May 22, 2003.
 {¶ 9} It is from the trial court's May 22, 2003, Entry that appellants now appeal, raising the following assignments of error:
 {¶ 10} "I. The trial court erred in finding that appellants answers to questions on the application were false.
 {¶ 11} "II. The trial court erred in its application of ohio revised code section 3923.14
 {¶ 12} "III. The trial court erred by not considering all factors in a light most favorable to plaintiffs in determining that answers by plaintiffs were fraudulently made."
 STANDARD OF REVIEW {¶ 13} Summary judgment proceedings present the appellate court with the unique opportunity of reviewing the evidence in the same manner as the trial court. Smiddy v. The Wedding Party,Inc. (1987), 30 Ohio St.3d 35, 36, 506 N.E.2d 212. As such, we must refer to Civ.R. 56(C) which provides, in pertinent part: "Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. * * * A summary judgment shall not be rendered unless it appears from such evidence or stipulation and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in the party's favor."
 {¶ 14} "Pursuant to the above rule, a trial court may not enter summary judgment if it appears a material fact is genuinely disputed. The party moving for summary judgment bears the initial burden of informing the trial court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. The moving party may not make a conclusory assertion that the non-moving party has no evidence to prove its case. The moving party must specifically point to some evidence which demonstrates the moving party cannot support its claim. If the moving party satisfies this requirement, the burden shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial." Vahila v. Hall, 77 Ohio St.3d 421,429, 1997-Ohio-259, 674 N.E.2d 1164, citing Dresher v. Burt,75 Ohio St.3d 280, 1996-Ohio-107, 662 N.E.2d 264.
 {¶ 15} It is pursuant to this standard that we review appellants' assignments of error.
 I, III {¶ 16} Appellants, in their first assignment of error, argue that the trial court erred in finding that appellants' answers to the questions on the health insurance application were false. In their third assignment of error, appellants argue that the trial court erred by not considering all factors in a light most favorable to appellants in determining that appellants' answers were fraudulently made.
 {¶ 17} As is stated above, in the case sub judice, appellee rescinded its health insurance coverage with respect to appellant Linda Acton after concluding, after an audit, that she had failed to disclose back and neck problems, abnormal Pap Smear test results, and treatment for depression, anxiety and adult attention deficit disorder. On appellee's insurance application, appellants indicated that neither of them had ever been treated for, or diagnosed with, any of the above conditions during the relevant five year period preceding the application.
 {¶ 18} Appellee, in support of its Motion for Summary Judgment, attached the deposition of Dr. John Stevenson. Dr. Stevenson, who was appellant Linda Acton's gynecologist from July of 1994 until October of 1997, testified during his deposition that appellant Linda Acton had two abnormal Pap Smear tests during October of 1996 and April of 1997, which would fall within the relevant five year period. The following is an excerpt from Dr. Stevenson's deposition testimony:
 {¶ 19} "Q. Now that we've had an opportunity to review Linda Acton's chart maintained by your office, John, is it fair to say that during the 1996 and 1997 time frame you determined that Linda Acton had two abnormal pap smear tests?
 {¶ 20} "A. Yes.
 {¶ 21} "Q. And that you conveyed that information to Linda Acton?
 {¶ 22} "A. Yes.
 {¶ 23} "Q. And that you, in fact, treated Linda Acton for having two abnormal pap smear tests?
 {¶ 24} "A. Yes." Deposition of Dr. Stevenson at 23. After both abnormal tests, a letter was sent to appellant Linda Acton stating, in relevant part, as follows: "Your recent pap smear has returned abnormal. Listed below are the various abnormalities seen when pap smears are done. I have marked which of these apply to you and the suggested treatment or follow-up necessary. . . ." (Emphasis added.)
 {¶ 25} "Atypia: Minor cellular changes have occurred that may be due to inflammation or infections. These changes are not precancerous."
 {¶ 26} While the letter sent after appellant Linda Acton's October, 1996, Pap Smear suggested that she repeat the test in three months, the letter sent following the 1997 test suggested that she have a colposcopy. Appellant Linda Acton, in her answers to appellee's Request for Admissions,[1] admitted that she had received both letters from Dr. Stevenson. Following treatment with cryotherapy in May of 1997, appellant Linda Acton received a normal Pap Smear test result in October of 1997.
 {¶ 27} Dr. Stevenson, during his deposition, further testified that although he did not see appellant Linda Acton in his office after October of 1997, he called in prescriptions for her "up through February of 1999" for treatment of yeast and bladder infections. Deposition of Dr. Stevenson at 19-20.
 {¶ 28} In short, we find that, construing the evidence in a light most favorable to appellants, reasonable minds could only conclude that appellants falsely stated on the insurance application that appellant Linda Acton had not had an abnormal Pap Smear during the relevant five year period.
 {¶ 29} As is stated above, appellants, in their application for health insurance, also indicated that neither of them had been treated for or diagnosed with depression during the five year period preceding the date of their application for health insurance with appellee. As is stated above, in the case sub judice, appellants applied to appellee for health insurance on August 11, 2000.
 {¶ 30} The deposition of Dr. Richard Sielski, appellant Linda Acton's family doctor, was filed in support of appellee's Motion for Summary Judgment. When appellant Linda Acton first went to see Dr. Sielski in 1994, she took with her a handwritten summary of the symptoms and feelings that she was having at such time. Appellant Linda Acton, in such summary, stated that she had "a feeling of depression and worthlessness" and that "depression has been my life long companion." Based on his office visit with appellant Linda Acton in August of 1994, Dr. Sielski concluded that she was exhibiting signs of depression, anxiety and adult attention deficit disorder. Dr. Sielski testified, during his deposition, that he relayed his conclusions to appellant Linda Acton and provided her with his diagnosis. Dr. Sielski provided appellant Linda Acton with a prescription for Zoloft, an antidepressant, to treat her depression.
 {¶ 31} Dr. Sielski further testified that he referred appellant Linda Acton to Dr. Donald Freidenberg, a neurologist, because of her complaints and symptoms of depression and adult attention deficit disorder. Dr. Freidenberg, in a letter to Dr. Sielski dated October 3, 1994, indicated that he believed that appellant Linda Acton had "[a]ttentional impairment due to depression." Dr. Freidenberg, in his letter, further stated as follows: "She [appellant] related that her depression had improved 60% and her attentional impairment has improved synchronously, but only approximately 40%, with treatment of her depression."
 {¶ 32} As a result of an examination of appellant Linda Acton on August 18, 1995, Dr. Sielski concluded that she was still showing signs of depression and decided to switch appellant Linda Acton from Zoloft to Prozac to treat her for her symptoms of depression. Appellant Linda Acton saw Dr. Sielski again in September of 1995. The following is an excerpt from Dr. Sielski's deposition testimony:
 {¶ 33} "Q. She was in again in September of 1995, so is it your testimony then that at the time you would have told her that she, in fact, suffered from depression since you put that down again for a diagnosis?
 {¶ 34} "A. Yes.
 {¶ 35} "Q. Would it surprise you, doctor, to know that Linda Acton says she was never treated for depression?
 {¶ 36} "A. Yes, it would.
 {¶ 37} "Q. Would it surprise you to say that she had been treated for anxiety, but to her knowledge never depression?
 {¶ 38} "A. Yes, it would surprise me." Deposition of Dr. Sielski at 70. Dr. Sielski again prescribed Prozac for appellant Linda Acton on September 5, 1995, and November 10, 1995. Thus, the evidence demonstrated that appellant Linda Acton had been treated for depression as recently as September of 1995, which is within the relevant five year period.
 {¶ 39} Based on the foregoing, we find that the trial court did not err in finding that appellants' made willfully false and fraudulent statements as to appellant's Linda Acton's abnormal Pap Smears and her diagnosis for, and treatment of, depression. Construing the evidence in a light most favorable to appellants, we find that reasonable minds could only conclude that appellants willfully made such false and fraudulent statements.
 {¶ 40} Appellee, in support of its Motion for Summary Judgment, attached an unrefuted affidavit from George Stadlander, appellee's Vice President of Underwriting, stating that had appellants disclosed the treatment of depression and abnormal pap smears, appellants' application would have been rejected with respect to appellant Linda Acton. Stadlander, in his affidavit, indicated that appellee's underwriting policy was to reject any applicant who received twenty or more points during the application review process. Based on the disclosure of cigarette smoking by appellant Linda Acton, five points were assigned. Stadlander, in his affidavit, further stated as follows:
 {¶ 41} "Had the Actons disclosed these conditions, Linda would have received 15 points for the abnormal pap smear and 10 points for depression. As such, Linda would have received a total of 30 points, and the Actons' application would have been rejected as it related to her." Because Stadlander indicated that appellant Linda Acton's application would have been rejected due to her abnormal Pap Smears and treatment for depression, we need not address whether appellants made willfully false and fraudulent statements with respect to Linda Acton's chiropractic treatment for neck and back problems.
 {¶ 42} Appellants' first and third assignments of error are, therefore, overruled.
 II {¶ 43} Appellants, in their second assignment of error, argue that the trial court erred in applying R.C. 3923.14. We disagree.
 {¶ 44} R.C. 3923.14 states, in relevant part, as follows: "The falsity of any statement in the application for any policy of sickness and accident insurance shall not bar the right to recovery thereunder, or be used in evidence at any trial to recover upon such policy, unless it is clearly proved that such false statement is willfully false, that it was fraudulently made, that it materially affects either the acceptance of the risk or the hazard assumed by the insurer, that it induced the insurer to issue the policy, and that but for such false statement the policy would not have been issued."
 {¶ 45} An individual will be viewed as having ratified his or her answers on an insurance application if the individual signed the same. See Republic Mut. Ins. Co. v. Wilson (1940),66 Ohio App. 522, 35 N.E.2d 467 and Ed Schory Sons, Inc. v. SocietyNatl. Bank, 75 Ohio St.3d 433, 441, 1996-Ohio-194,662 N.E.2d 1074.
 {¶ 46} In the case sub judice, the trial court stated, in part, as follows in its May 13, 2003, Memorandum of Decision:
 {¶ 47} "Furthermore, it is virtually uncontested that the application contained false statements as to pre-existing conditions, diagnosis, and prior treatment. Plaintiffs had a duty to report these prior occurrences to MMO. Having failed to do so, Plaintiffs, as a matter of law, became participants in a fraudulent activity. As a result, it must be held that the false statements were willfully false and were fraudulently made for purposes of R.C. 3923.14."
 {¶ 48} Appellants now argue that the trial court erred in failing to "treat the question of good faith" on the part of appellants and that "[t]he application of this standard to the statute completely negates any requirement of `clear proof' that a false statement is willfully false or fraudulently made under the normal standards of willfulness or fraud."
 {¶ 49} In Buemi v. Mut. of Omaha Ins. Co. (1987),37 Ohio App.3d 113, 524 N.E.2d 183, the Cuyahoga County Court of Appeals dealt with the issue of determining when statements were "willfully false" and "fraudulently made." Upon examination of Ohio law, the court concluded that, when an applicant makes a knowingly false answer to a question on the application, such answer satisfies the statutory requirement that it be "willfully false" and "fraudulently made."
 {¶ 50} In the case sub judice, appellants signed the application for health insurance on August 11, 2000, and, by doing so, adopted and ratified the answers to all questions contained therein. See Ed Schory Sons, supra. As is set forth above, the application contained false answers to questions relating to appellant Linda Acton's treatment for depression and her abnormal pap smear test results. Appellants, therefore, are deemed to have adopted such answers by signing the health insurance application. Accordingly, appellants' responses to such questions were "willfully false" and "fraudulently made."
 {¶ 51} As is stated above, appellee, in support of its Motion for Summary Judgment, attached an affidavit from George Stadlander indicating that, in accordance with appellee's underwriting standards, the policy would not have been issued to appellants had appellant Linda Acton's prior abnormal Pap Smears and diagnosis of, and treatment for, depression been disclosed. In addition, appellant Linda Acton, during her deposition, testified that she understood that her eligibility to receive health insurance coverage from appellee depended on how she answered questions on the application and that she knew that she needed to be truthful and accurate in answering the questions. Thus, appellee produced evidence that appellants' false statements on the application materially affected the acceptance of the risk, that such statements induced appellee to issue the health insurance policy to appellants, and that, but for the false statements, the health insurance policy would not have been issued to appellants.
 {¶ 52} Based on the foregoing, we find that, viewing the evidence in a light most favorable to appellants, the elements set forth in R.C. 3923.14 were sufficiently established.
 {¶ 53} Appellants' second assignment of error is, therefore, overruled.
 {¶ 54} Accordingly, the judgment of the Fairfield County Court of Common Pleas is affirmed.
Hoffman, P.J. and Farmer, J., Concur.
[1] Appellants' response to appellee's Request for Admissions was submitted in support of appellee's motion for summary judgment.