DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from the judgment of the Lucas County Court of Common Pleas which granted the motion for summary judgment filed by appellee Medical Mutual of Ohio ("MMO") and dismissed appellants' complaint. For the reasons that follow, we reverse the decision of the trial court.
 {¶ 2} Appellant, Kathy Tobis, is the president of appellant September Winds Motor Coach, Inc. ("September Winds"). September Winds had a small business group plan for health insurance with MMO. Kathy Tobis was an insured under the policy, as were appellants Steve and Jamie Tobis. Appellants previously had health insurance through Family Health Plan, but sought different coverage in September 2000.
 {¶ 3} Insurance agent Tony Bowerman had arranged for September Winds' health insurance coverage with different carriers since 1997. In 2000, Bowerman determined that September Winds could obtain less expensive coverage through MMO. Bowerman completed the necessary application for September Winds to obtain coverage with MMO. As part of the application process, Bowerman also completed the necessary medical history questionnaire for Kathy Tobis. On September 26, 2000, Steve Tobis signed the application as "owner" of September Winds, and Kathy Tobis signed her medical history questionnaire. Neither form was read or reviewed by Steve or Kathy Tobis. When questioned why they did not review the forms, both generally testified that, because Bowerman had been their agent previously, and knew about Kathy Tobis' medical history, they trusted him with the completion of the forms.
 {¶ 4} It is undisputed that, although Kathy Tobis had a history of cancer, gall bladder surgery in 1998, cervical disc surgery in June 2000, and a recent diagnosis of two herniated discs in her lower back, which would require surgery, her medical conditions were not disclosed on the forms submitted to MMO. Bowerman does not dispute that he was aware of Kathy Tobis' medical conditions; rather, with respect to why he did not include her medical information in the application, Bowerman stated in his affidavit that the Health Insurance Portability and Accountability Act ("HIPAA") precluded MMO from denying group coverage to September Winds because September Winds had held group health coverage for more than 12 months prior to submitting its application to MMO. As such, Bowerman stated that the existence of preexisting conditions was irrelevant with respect to whether coverage would be provided to September Winds. Bowerman further stated in his affidavit that:
 {¶ 5} "None of the parties willfully, purposefully or knowingly made any misstatements in the application. Indeed, the parties had no need or intent to make a false statement because (1) they had existing coverage in full force and effect that they could have kept and maintained, albeit at a slightly higher premium; and (2) HIPAA precludes the subsequent insurer from even considering a preexisting condition when at least 12 months of prior coverage was in effect (as in this case)."
 {¶ 6} MMO provided September Winds coverage, but subsequently discovered the omissions with respect to Kathy Tobis' medical history, and cancelled the group policy on July 31, 2001. Appellants sued MMO on January 28, 2002, alleging that MMO violated the requirements in R.C. 3923.14. Appellants also sued on the bases of bad faith, breach of contract, and unjust enrichment. The parties filed cross-motions for summary judgment. On May 16, 2003, the trial court denied appellants' motion for summary judgment, granted MMO's motion for summary judgment, and dismissed appellants' action with prejudice. Appellants filed the instant appeal and raise the following assignments of error:
 {¶ 7} "Assignment of Error No. 1: The trial court erred when it held that the insurance agent was not the agent of appellee insurance company.
 {¶ 8} "Assignment of Error No. 2: The trial court erred in ignoring the element of scienter in determining that appell[ants] defrauded the insurance company.
 {¶ 9} "Assignment of Error No. 3: The trial court erred when it ruled that HIPAA Preempts R.C. 3923.14.
 {¶ 10} "Assignment of Error No. 4: Even assuming preemption, which there is not, the trial court erred in it's application of42 U.S.C. § 300gg-12(b)(2).
 {¶ 11} "Assignment of Error No. 5: The trial court erred when it held that R.C. 3923.14 does not permit a private right of action.
 {¶ 12} "Assignment of Error No. 6: The trial court erred in granting summary judgment for the appellees.
 {¶ 13} "Assignment of Error No. 7: The trial court erred in failing to grant summary judgment for the appellants.
 {¶ 14} "Assignment of Error No. 8: The trial court erred in dismissing the complaint in its entirety when the court's opinion does not address plaintiff's separate claims of bad faith and unjust enrichment."
 {¶ 15} At the outset, this court notes that in reviewing a motion for summary judgment, we must apply the same standard as the trial court. Lorain Natl. Bank v. Saratoga Apts. (1989),61 Ohio App.3d 127, 129. Summary judgment will be granted when there remains no genuine issue of material fact and, when construing the evidence most strongly in favor of the non-moving party, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law. Civ.R. 56(C).
 {¶ 16} In order for an insurer to be entitled to cancel or bar coverage due to a false statement contained in an insurance application, there are two possible statutes which apply, R.C.3923.14 or Section 300gg-12(b)(2), Title 42, U.S.Code. The Ohio statute states that "[t]he falsity of any statement in the application for any policy of sickness and accident insurance shall not bar the right to recovery thereunder, * * * unless it is clearly proved that such false statement is willfully false, that it was fraudulently made, that it materially affects either the acceptance of the risk or the hazard assumed by the insurer, that it induced the insurer to issue the policy, and that but for such false statement the policy would not have been issued." R.C.3923.14. The federal statute states, specifically with respect to group health insurance, that "[a] health insurance issuer may * * * discontinue health insurance coverage offered in connection with a group health plan" if "[t]he plan sponsor has performed an act or practice that constitutes fraud or made an intentional misrepresentation of material fact under the terms of the coverage. * * *" Section 300gg-12(b)(2), Title 42, U.S.Code.
 {¶ 17} Appellants argue that under either of these consumer protection laws, MMO must provide clear and convincing proof of fraud or intentional misrepresentation by September Winds before cancellation of the group policy is permissible. In general, appellants argue that the trial court erroneously granted summary judgment to MMO as a result of several underlying false premises: (1) that an insurance agent is not an agent of the insurance company; (2) that fraud may occur without scienter, a necessary element which appellee admits through its agent has not been satisfied; and (3) that HIPAA preempts R.C. 3923.14 when both the statute and case law clearly provide otherwise.
 {¶ 18} Accordingly, appellants argue in their first assignment of error that the trial court erred when it held that Bowerman was not MMO's agent. We agree. To determine whether Bowerman was appellants' agent or MMO's we need look no further than R.C. 3923.141 and R.C. 3929.27.
 {¶ 19} R.C. 3923.141, entitled "Agent of the Insurer," applies specifically to "Sickness and Accident Insurance," and provides: "Any person who solicits an application for * * * a policy of sickness and accident insurance to insure any other person shall be considered the agent of the insurer and not of the insured in any controversy between the insured or his beneficiary and the insurer issuing or reinstating a policy upon such application or accepting or making a renewal of such policy." Similarly, R.C. 3929.27, entitled "Solicitor agent of company," which is categorized in the Revised Code under "Domestic and Foreign Insurance Companies Other Than Life," states: "A person who solicits insurance and procures the application therefore shall be considered as the agent of the * * * company * * * thereafter issuing a policy upon such application or a renewal thereof, despite any contrary provisions in the application or policy."
 {¶ 20} Insofar as this policy is one for health insurance, we find that R.C. 3923.141, rather than R.C. 3929.27, is more applicable in this situation. Nevertheless, despite arguments to the contrary, we find, as a matter of law, that pursuant to either statute, at the time Bowerman submitted the application to MMO, he was acting as MMO's agent, not appellants'. Accordingly, we find that the trial court erred in holding otherwise.
 {¶ 21} As appellants correctly argued in their motion for summary judgment, and in this appeal, the fact that Bowerman was acting as MMO's agent is particularly significant because, generally, medical conditions known to an agent are imputable to the insurer, and, in the absence of fraud or collusion on the part of the insured, the insurer is estopped from relying on such conditions to void the policy. See Pannunzio v. Monumental LifeIns. Co. (1958), 168 Ohio St. 95, paragraph three of the syllabus.
 {¶ 22} In Saunders v. Allstate Ins. Co. (1958),168 Ohio St. 55, the Ohio Supreme Court was faced with a situation where the insurer's agent completed the application for insurance and, although the insured had provided the agent with truthful and accurate information, the agent put down incorrect information on the application. Even though the insured signed the application, the Ohio Supreme Court held that (1) where there was no evidence that the applicant knew or should have known that the insurer was being deceived, (2) where the applicant relied on the agent in good faith and was otherwise blameless, and (3) where there was an absence of evidence of fraud or collusion on the part of the insured, the insurer was estopped from relying on the falsity of the answers to avoid liability on the policy issued pursuant to the application. In pertinent part, Saunders at paragraphs two, three, and four, states the following:
 {¶ 23} "2. Information obtained by a soliciting agent of an insurer when making out an application for insurance is imputable to the insurer, and, in the absence of proof that the applicant knew or should have known that the insurer was being deceived, the insurer can not escape liability on a subsequently issued policy by showing that its agent failed or neglected to disclose such information to it.
 {¶ 24} "3. Where an application for insurance is made out by the insurer's agent who fills in false or incorrect answers to the questions contained therein, which have been truthfully answered by the applicant, and there is no fraud, collusion or knowledge, actual or constructive, on the part of the applicant in connection therewith, the insurer is estopped to rely upon the falsity of such answers to avoid liability on the policy issued pursuant to the application.
 {¶ 25} "4. Where an agent, acting for and on behalf of the insurer principal in soliciting an insurance risk, misleads the applicant and in filling out the application notes answers to questions therein different from truthful answers given by the applicant, and, where the applicant, in reliance on the agent, acts in good faith, is otherwise blameless and is then issued a policy upon payment of a premium, the insurance is effective, and, when a loss occurs within the coverage of the policy, the insurer is obligated to respond."
 {¶ 26} Since Saunders, a number of courts have similarly held that, even when the application was signed by the insured, where an insured disclosed or provided correct information to the insurer's agent, but for whatever reason the insurer's agent failed to include the correct information in the application, the insurer could not be relieved from having to provide coverage. See, e.g., Beard v. N.N. Investors Ins. Co. (1985),21 Ohio App.3d 219; Meadors v. Progressive Specialty Ins. Co., (Dec. 13, 1991), Trumbull App. No. 91-T-4514; General United Life Ins.Co. v. Katz (Oct. 18, 1978), Hamilton App. Nos. C-77425, C-77426, C-77443; and Dickson v. Ohio Employers Trust (Mar. 23, 1977), Stark App. No. CA 4527.
 {¶ 27} In this case, Steve and Kathy Tobis both testified in their depositions that Bowerman was aware of Kathy Tobis' medical conditions. Steve Tobis testified that Bowerman would "come over to visit from time to time and * * * would ask Kathy how she was and how did the neck operation go." Additionally, Kathy Tobis testified that whenever there was a new event in her medical history she would make Bowerman aware of it. Clearly, there is evidence in this case that, at least to some extent, Bowerman knew about aspects of Kathy Tobis' medical history which he did not include in the written application forms submitted to MMO. As MMO's agent, we find that Bowerman's knowledge is imputed to MMO. See Saunders, 168 Ohio St. 55, paragraph two of the syllabus; and Pannunzio, 168 Ohio St. 95, paragraph three of the syllabus. Thus, in the absence of proof that appellants knew or should have known that the insurer was being deceived, we find that MMO cannot deny coverage and cancel the policy on the basis that Bowerman failed or neglected to disclose all pertinent information to it. See Saunders at paragraphs two and three of the syllabus.
 {¶ 28} Accordingly, we find that appellants' first assignment of error is found well-taken. The issue, however, therefore becomes whether MMO established that appellants fraudulently or intentionally misrepresented information to MMO to obtain coverage.
 {¶ 29} Appellants argue in their second assignment of error that the trial court erred in ignoring the element of scienter in determining that appellants defrauded MMO. MMO, however, argues that there is ample case law which establishes that if parties sign a contract, even if they have not read it, they ratify and adopt the statements contained therein, are bound by the terms of the contract, and will not be relieved of their responsibilities thereunder. See, e.g., Republic Mut. Ins. Co. v. Wilson (1940),66 Ohio App. 522; and Stipcich v. Metropolitan Life Ins. Co.
(1928), 277 U.S. 311, 316. Specifically, with respect to false statements contained in an insurance application, MMO argues that by signing an application which contains false statements, the insureds are deemed to have known of the inaccuracies of the application and thus become participants in the fraud. See, e.g.,Sambles v. Metropolitan Life Ins. Co. (1952), 158 Ohio St. 233, paragraph one of the syllabus; Buemi v. Mut. of Omaha Ins. Co.
(1987), 37 Ohio App.3d 113, 119; and El-Ha'Kim v. Amer. Gen.Life Accident Co. (Aug. 20, 1999), Mahoning App. No. 97 CA 6. Additionally, the ratified statements are deemed to be willfully and fraudulently made, as a matter of law. Id.
 {¶ 30} Proceeding on the premise that Bowerman was not MMO's agent, and relying on the above body of law cited by MMO, the trial court held that by signing the application forms, which they had an opportunity to review, appellants adopted the statements contained therein. Insofar as the application forms contained false information, the trial court held that the statements were "willfully false" and "fraudulently made," as a matter of law, and that MMO was permitted to cancel the group policy. We, however, find that the trial court's holdings were erroneous.
 {¶ 31} Because MMO had imputed knowledge of Kathy Tobis' medical conditions, we find that the trial court's reliance on the cases cited by MMO was incorrect, as those cases are factually distinguishable from this case. See, e.g., Sambles v.Metropolitan Life Co. (1952), 158 Ohio St. 233; Republic Mut.Ins. Co. v. Wilson (1940), 66 Ohio App. 522; Buemi v. Mut. ofOmaha Ins. Co. (1987), 37 Ohio App.3d 113; Acton v. MedicalMut. of Ohio, Fairfield App. No. 2003CA0043,2004 Ohio 980;[1] and Prudential Ins. Co. of America v. Carr
(1964), 30 Ohio Op.2d 373, 199 N.E.2d 412. In each of those cases, it was alleged that the insureds actually provided false information when completing the application themselves, or with an agent's help. In none of those cases was there any indication that the insurer was aware of or had knowledge of the truth. Compare this case also with Redden v. Constitution Life Ins.Co. (1960), 113 Ohio App. 202, which is relied upon by MMO. InRedden, the court held that because the applicant discovered an error in the application, before any risks had developed under the policy, even though the error could have been made by the agent, the applicant's behavior was nevertheless fraudulent.
 {¶ 32} The facts in this case are clearly distinguishable from the above cases and, thus, the cases are inapplicable in this situation. Accordingly, we find that, unless there was evidence that appellants knew or should have known that MMO was being deceived, or that appellants were otherwise engaged in fraud or collusion, MMO is estopped from relying on the falsity of the information in the application to cancel coverage. SeeSaunders, supra.
 {¶ 33} Upon a thorough review of the evidence presented in support of the parties' motions for summary judgment, we find that there is no evidence in this case that appellants provided Bowerman false information about Kathy Tobis' medical conditions. To the contrary, Bowerman was apparently aware of her medical history. Additionally, there is no evidence that appellants knew Bowerman had failed to supply MMO with all pertinent medical information, or that appellants had intended to defraud MMO or misrepresent information to it. Rather, as was the case inSaunders, Beard, and Meadors, for example, the evidence submitted in this case indicates that appellants relied in good faith on the actions of MMO's agent.
 {¶ 34} Furthermore, we note that MMO's reliance on El-Ha'Kimv. Amer. Gen. Life Accident Co. (Aug. 20, 1999), Mahoning App. No. 97 CA 6, is misplaced, as that case is also factually distinguishable from this case. In El-Ha'Kim, the court held that by signing the application, which contained false statements as to pre-existing conditions and prior treatment, although correct information allegedly had been provided, the insured adopted those false statements and, thereby became a participant in the fraudulent activity. The material difference betweenEl-Ha'Kim and this case is that the application contained a provision which stated, "No agent has authority to waive any answer or otherwise modify this application, or to bind the Company in any way by making any promise or representation which is not set out in writing in this application." The court inEl-Ha'Kim interpreted this statement in the application to mean that the agent had no authority to act as the agent of the insurer. As such, the court held, "As this language clearly indicates, if in fact Ms. Jackson advised appellant that he need not worry about his pre-existing conditions and then proceeded to mark the inappropriate answers, these actions cannot bind AGLA." Accordingly, we find that, because there was no issue that any knowledge of the agent assisting in the completion of the application could be imputed to the insurer, El-Ha'Kim is distinguishable on its facts from this case.
 {¶ 35} We therefore find that, although the statutes and case law do not specifically mention "scienter" as being a necessary finding, before a policy can be cancelled on the basis of fraud, we find that the trial court erred under the facts in this case in holding that, as a matter of law, the inclusion of false statements in the application forms was both "willfully false" and "fraudulently made." Rather, we find that genuine issues of material fact exist concerning to what degree Bowerman, i.e., MMO, was aware of Kathy Tobis' medical conditions, despite the absence of such in the written application, and whether appellants sought to defraud or intentionally misrepresent any information provided to MMO. To this extent, we find appellants' second assignment of error well-taken.
 {¶ 36} In their third assignment of error, appellants argue that the trial court erred when it ruled that HIPAA preempts R.C.3923.14. We disagree.
 {¶ 37} In order to determine whether the federal statute supercedes the state statute in this case, we must apply Section 300gg-23(a), Title 42, U.S. Code, which states in pertinent part:
 {¶ 38} "(a) Continued applicability of State law with respect to health insurance issuers.
 {¶ 39} "(1) In general. * * * 42 USCS §§ 300gg et seq. shall not be construed to supersede any provision of State law which establishes, implements, or continues in effect any standard or requirement solely relating to health insurance issuers in connection with group health insurance coverage except to the extent that such standard or requirement prevents the application of a requirement of this part * * *."
 {¶ 40} Based on section 300gg-23(a), we find that Section 300gg-12, Title 42, U.S. Code, applies in this case. Initially, we note that R.C. 3923.14 does not relate specifically to group health insurers, whereas section 300gg-12 does. Additionally, we find that R.C. 3923.14 implicitly prevents the application of Section 300gg-1, Title 42, U.S. Code, which states that a group health plan may not establish rules for eligibility of any individual based on health related issues, including, but not limited to, health status or medical history. Specifically, although section 300gg-1 states that eligibility cannot be determined on the basis of an individual's medical history, we find that R.C. 3923.14's "but for" clause[2] implies that an insurer would be permitted to deny issuance of a policy based upon the medical history provided on an application.
 {¶ 41} Insofar as this R.C. 3923.14 seemingly prevents the application of section 300gg-1, we find that section 300gg-12 supersedes R.C. 3923.14, and therefore applies in this case. Accordingly, insofar as MMO asserted fraud on behalf of appellants, we find that MMO was only permitted to discontinue appellants' policy if September Winds "performed an act or practice that constitute[d] fraud or made an intentional misrepresentation of material fact under the terms of the coverage." See Section 300gg-12, Title 42, U.S.Code. We therefore find appellants' third assignment of error not well-taken.
 {¶ 42} Appellants argue in their fourth assignment of error that the trial court erred in its application of Section 300gg-12(b)(2), Title 42, U.S. Code, and argue in their sixth assignment of error that the trial court erred in granting MMO's motion for summary judgment. Based on our determination under appellants' second assignment of error that genuine issues of material fact exist which preclude the granting of summary judgment in this case, we find appellants' fourth and sixth assignments of error well-taken.
 {¶ 43} Appellants argue in their fifth assignment of error that the trial court erred when it held that R.C. 3923.14 did not permit a private right of action. Insofar as we find that42 USCS § 300gg-12, rather than R.C. 3923.14 applies to this group health insurance policy, we find that appellants' fifth assignment of error should be denied as moot and found not well-taken. Furthermore, we note that appellants clearly have claims of breach of contract, bad faith, and unjust enrichment which can be pursued against MMO.
 {¶ 44} In their seventh assignment of error, appellants argue that the trial court erred in failing to grant their motion for summary judgment. We, however, find there are genuine issues of material fact and that reasonable minds could conclude differently regarding whether there were aspects of Kathy Tobis' medical conditions that were not known to Bowerman and MMO, but should have been included in the application by appellants, and whether appellants intentionally misrepresented information to MMO. Accordingly, we find that appellants are not entitled to summary judgment on their claims. Appellants' seventh assignment of error is therefore found not well-taken.
 {¶ 45} Appellants argue in their eighth assignment of error that the trial court erred in dismissing their complaint with respect to their claims of bad faith and unjust enrichment. To the extent that we find the trial court incorrectly granted summary judgment in this case, we find appellants' eighth assignment of error well-taken.
 {¶ 46} Based on the foregoing, we find that reasonable minds could conclude differently regarding whether MMO was otherwise aware of all of the medical information omitted from the insurance application forms, and whether appellants intended to defraud MMO or misrepresent information. Accordingly, we find that the trial court erred in granting MMO's motion for summary judgment. However, due to the genuine issues of material fact, we find that the appellants also are not entitled to summary judgment on their causes of action. We therefore remand this matter to the trial court for further proceedings on the merits of this case, and in accordance with this decision. Costs of this appeal are assessed to Medical Mutual of Ohio.
JUDGMENT REVERSED.
Handwork, P.J. Knepper, J. Singer, J. concur.
[1] On March 3, 2004, MMO filed a motion to supplement the record with Acton. To the extent that we find Acton is duplicative of other cases cited by MMO and is factually distinguishable from the present case, we deny MMO's motion to supplement the record.
[2] "The falsity of any statement in the application for any policy of sickness and accident insurance shall not bar the right to recovery thereunder, or be used in evidence at any trial to recover upon such policy, unless it is clearly proved that such false statement is willfully false, that it was fraudulently made, that it materially affects either the acceptance of the risk or the hazard assumed by the insurer, that it induced the insurer to issue the policy, and that but for such falsestatement the policy would not have been issued." R.C. 3923.14.